**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **FirstPlus Financial Group** | ) | **Case No. 09-33918 (HDH)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**TRUSTEE'S PLAN OF LIQUIDATION FOR
FIRSTPLUS FINANCIAL GROUP, INC.
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**DATED December 13, 2010**

Matthew D. Orwig, duly appointed and acting Chapter 11 Trustee (the "Chapter 11 Trustee") of FirstPlus Financial Group, Inc., ("FirstPlus" or the "Debtor") hereby proposes the following Chapter 11 plan of liquidation for the Debtor under § 11 U.S.C. 1121(c) for the resolution of Claims against and Equity Interests in the Debtor. All creditors, holders of Equity Interests and other parties in interest should refer to the Disclosure Statement for a discussion of the Debtor's history, properties, the significant occurrences in the case, events leading up to the liquidation of t he Debtor, and for a summary and analysis of the Plan and certain related matters.

***All holders of Claims against and Equity Interests in the Debtor are encouraged to read the Plan, the Disclosure Statement and related solicitation materials in their entirety before voting to accept or reject the Plan.***

**ARTICLE I**

**DEFINITIONS**

**Section 1.1.    Defined Terms.**

As used in the Plan, the following bold face terms when capitalized shall have the meanings ascribed to them below, unless the context otherwise requires. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    **Administrative Claim.** Any cost or expense of administration of the Chapter 11 Case incurred prior to the Effective Date, allowed under Bankruptcy Code section 503(b) and entitled to priority in payment under Bankruptcy Code section 507(a)(2), including any actual and necessary expenses of preserving the estate of the Debtor, or operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor or the Chapter 11 Trustee during the pendency of the Chapter 11 Case in connection with the conduct or wind down of the business of, the acquisition or lease of property by, or the rendition of services to the Debtor or the Chapter 11 Trustee, all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under 28 U.S.C. § 1930.

2.    **Administrative Claim Bar Date.** The date set by the Bankruptcy Court as the final date for filing Administrative Claims, other than Professional Fee Claims, and Ordinary Course Administrative Claims.

3.    **Administrative Claim Reserve.** The segregated bank account to be established by the Chapter 11 Trustee in accordance with Section 6.2(a) of the Plan.

4.    **Adversary Proceedings.** The adversary proceedings commenced by the Chapter 11 Trustee in the Bankruptcy Court and pending on the Effective Date against any third party.

5.    **Allowed.** With reference to a Claim allowed means: (a) any Claim against the Debtor that has been listed in the Schedules filed as liquidated in an amount greater than zero dollars and not disputed or contingent and for which no contrary Proof of Claim has been filed and as to which no timely objection has been interposed; (b) except as provided in the Plan, any Claim (including any Administrative Claim that is not a Professional Fee Claim) as to which a Proof of Claim has been timely filed by the applicable deadline and (i) no objection to the allowance thereof has been timely interposed on or before the Claims Objection Bar Date and (ii) such Claim has not (as applicable) been withdrawn, paid in full (pursuant to a prior order of the Bankruptcy Court or otherwise), or otherwise deemed satisfied in full; (c) any Claim as to which any objection thereto or

other motion to disallow, estimate, or expunge, in whole or in part, or any Adversary Proceeding against the holder thereof, was filed or commenced (as applicable) but is no longer pending and instead has been determined by a Final Order in favor of the respective Claim holder (but solely to the extent and amount such Claim has been so determined in the applicable Final Order), or any such objection, motion to disallow, estimate, or expunge, or Adversary Proceeding (as applicable) has been settled, waived through payment, or withdrawn; (d) any Claim that has otherwise been resolved, settled, or otherwise deemed allowed by a Final Order; (e) any Claim as to which, upon the lifting of the automatic stay pursuant to Bankruptcy Code § 362, the liability of the Debtor, allowance, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (f) any Claim that is expressly deemed an Allowed Claim under the Plan. Unless otherwise ordered by the Bankruptcy Court prior to the entry of the Confirmation Order, or as specifically provided to the contrary in this Plan with respect to any particular Claim, an "Allowed" Claim shall not include (i) any interest on such Claim to the extent accruing or maturing on or after the Petition Date, (ii) any punitive or exemplary damages, or (iii) any claims for any fine, penalty, or forfeiture. Nothing in this Plan shall prevent the Chapter 11 Trustee or the Creditors Trust from objecting to Claims after the Confirmation Date.

6. **Ballot.** The form distributed to each holder of an impaired Claim that is entitled to vote to accept the Plan, on which is to be indicated acceptance or rejection of Plan.

7. **Bankruptcy Code.** Title 11 of the United States Code, as now in effect or hereafter amended if such amendments are made applicable to the Chapter 11 Case.

8. **Bankruptcy Court.** The United States Bankruptcy Court for the Northern District of Texas, or, if such court ceases to exercise jurisdiction over the Chapter 11 Cases, the court that exercises jurisdiction over the Chapter 11 Case.

9. **Bankruptcy Rules.** The Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended from time to time, and the local rules of the Bankruptcy Court.

10. **Bar Date.** The date ordered by the Bankruptcy Court setting October 27, 2009 as final date for filing Claims, except for a governmental units.

11. **Business Day.** Any day other than a Saturday, Sunday or other day on which commercial banks in Dallas, Texas are authorized or required by law to close.

12. **Causes of Action.** Any and all Chapter 5 Causes of Action and any and all claims, actions, Adversary Proceedings, causes of action, suits and demands whatsoever, whether pending or not known or unknown, scheduled or not scheduled that have accrued to the Debtor or its Estate or that may be pursued derivatively by or on behalf of the Debtor or the Estate.

13. **Chapter 5 Causes of Action.** Any and all rights, claims and causes of action of the Debtor, its Estate under Chapter 5 of the Bankruptcy Code, whether known or unknown, in law, equity or otherwise.

14. **Chapter 11 Case.** The case under Chapter 11 of the Bankruptcy Code, commenced on June 23, 2009, captioned above, together with all of the proceedings held therein and all actions taken in connection therewith.

15. **Claim.** Any right to (a) payment from the Debtor, whether or not such right is reduced to a judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for breach of performance if such breach gives rise to a right of payment from any Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

16. **Claims Objection Bar Date.** The deadline for filing Claim objections set by the Bankruptcy Court in the Confirmation Order.

17. **Class.** A category or group of holders of Claims or Interests as designated in Article III of this Plan pursuant to Section 1122(a)(i) of the Bankruptcy Code.

18. **Confirmation Date.** The date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the legal docket maintained by the clerk's office.

19. **Confirmation Order.** An order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

20. **Creditors Trust.** The trust established under the Plan according to the Creditors Trust Agreement for the benefit of unsecured creditors.

21. **Creditors Trust Agreement.** The agreement governing the Creditors Trust, dated as of the Effective Date, substantially in the form set forth in the Plan Supplement or as otherwise filed with the Bankruptcy Court, as the same may be amended from time to time in accordance with the terms and conditions thereof.

22. **Creditors Trust Assets.** (a) the Causes of Action (including the Adversary Proceedings) and the net proceeds thereof; (b) all Cash on hand from the resolution of any Adversary Proceeding or otherwise after the Chapter 11 Trustee has made the payments as set forth in Plan, including the amounts as determined by the Chapter 11 Trustee or the Creditors Trust in good faith as being reasonably necessary to pay (i) all remaining Allowed Administrative Claims (including, all Professional Fee Claims relating to services rendered or reimbursement of expenses incurred through and including the Confirmation Date), and all post-Confirmation Date fees and expenses of the Debtor, the Chapter 11 Trustee and their professionals, and (ii) any and all Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims that were not paid in full on the Effective Date (if any) which amounts shall be paid by the Creditors Trust; and (c) all other Property of the Debtor and its Estate as of the Effective Date and the proceeds thereof that were not transferred, sold, distributed, abandoned, waived, or disposed of in any way by the Chapter 11 Trustee prior to the Effective Date.

23. **Disclosure Statement.** The written disclosure statement describing the Plan, as amended, supplemented, or modified from time to time, prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3018.

24. **Disputed Claim.** Any Claim or portion thereof which has not otherwise been or is not otherwise Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court,

a. if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the Chapter 11 Trustee or the Creditors Trust, or any other party-in-interest has either (i) interposed an objection, in whole or in part, or request for estimation, (ii) filed a motion to disallow or expunge, in whole or in part, which has not been withdrawn or determined by a Final Order or otherwise resolved or settled by the parties thereto or (iii) commenced an Adversary Proceeding or other Cause of Action against the holder of such Claim that has not yet been resolved, withdrawn, or settled; or

b. if a Proof of Claim has been filed by the applicable deadline: (i) a Claim for which a timely objection, in whole or in part, request for estimation, or motion to disallow or expunge, in whole or in part, is interposed which has not been withdrawn or determined by a Final Order of the Bankruptcy Court; or (ii) a Claim whose holder is a defendant in an Adversary Proceeding (including, without limitation, any Defendant) or other Cause of Action that has not yet been resolved, withdrawn, or settled; or

      c.     if a request for payment of an Administrative Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Debtor's books and records; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Debtor's books and records, but the nature or amount of the Claim as asserted in the request for payment varies from the nature or amount of such Claim as listed on the Debtor's books and records; or (iii) a Claim for which either (x) a timely objection, in whole or in part, or request for estimation or (y) a motion to disallow or expunge, in whole or in part, or an Adversary Proceeding is interposed against the holder of such Claim which has not been withdrawn or determined by a Final Order of the Bankruptcy Court or otherwise resolved or settled by the parties thereto. Wherever in the Plan the word "Disputed" precedes a defined term describing a Claim, that phrase will mean a Disputed Claim of the type described.

      **25.**     **Disallowed.** When used with respect to a Claim, means that Claim or applicable portion thereof has been determined by a Final Order to be invalid or that is barred by operation of a bar date established in the Plan or the Confirmation Order.

      **26.**     **Distribution Dates.** Any such date, including the Initial Distribution Date and any subsequent Distribution Date, as the Plan or the Creditors Trust shall establish for making distributions consistent with the terms of the Plan.

      **27.**     **Distribution Record Date.** The record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first Business Day following the Effective Date.

      **28.**     **Effective Date.** The first Business Day on and after the Confirmation Date, specified by the Chapter 11 Trustee on which (a) no stay of the Confirmation Order is in effect, and (b) the conditions to effectiveness specified in the Plan have been satisfied or waived.

      **29.**     **Equity Interest or Interest.** Any issued, unissued, authorized or outstanding capital stock, membership interest and any other equity security, as defined in Section 101(16) of the Bankruptcy Code in the Debtor and any and all (i) shares, (ii) securities, options, warrants, rights, calls, subscriptions, agreements, commitments, conversion rights, or understandings of any nature whatsoever, fixed or contingent, that directly or indirectly (A) call for the issuance, redemption, sale, pledge or other disposition of any shares of capital stock of the Debtor or securities convertible into, or other rights to acquire capital stock of the Debtor, (B) obligate the Debtor to grant, offer or enter into any of the foregoing,(C) "phantom stock," stock appreciation rights or other similar rights the value of which is related to or based upon the price or value of any class or series of capital stock of the Debtor.

      **30.**     **Estate.** The estate created in the Chapter 11 Case under Bankruptcy Code section 541.

      **31.**     **Final Order.** An order that has not been reversed or stayed, is no longer subject to appeal, certiorari proceeding or other proceeding for review, reargument, or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review, reargument, or rehearing has been requested or is then pending and the time to file any such appeal, certiorari proceeding or other proceeding for review, reargument, or rehearing has expired or as to which any right to appeal, petition for certiorari, reargue, or seek rehearing shall have been waived in writing in form and substance satisfactory to the Chapter 11 Trustee, or the Creditors Trust, as applicable.

      **32.**     **Initial Distribution Date.** As soon as practicable after the Effective Date.

      **33.**     **Initial Trustee or Trustee.** Matthew D. Orwig serving in the capacity of Trustee of the Creditors Trust.

34. **Ordinary Course Administrative Claims.** Any Unsecured Claim relating to the provision of goods or services to the Debtor or the Chapter 11 Trustee arising with, or held by, person or entities with whom the Debtor or the Chapter 11 Trustee is conducting businesses on or after the Petition Date or entitled to administrative priority by order of the Bankruptcy Court or any Claim by a governmental unit under Section 503(b)(1)(B) and (C) of the Bankruptcy Code.

35. **Other Causes of Action.** Any and all rights, claims and causes of action of the Debtor, its bankruptcy Estate, whether known or unknown, in law, equity or otherwise, other than Chapter 5 Causes of Action.

36. **Person.** Any individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization or government or subdivision thereof or other entity.

37. **Petition Date.** June 23, 2009, the date on which the Debtor filed its petition under Chapter 11.

38. **Plan.** This plan of liquidation under Chapter 11 of the Bankruptcy Code, either in its present form or as it may be further amended, supplemented, or modified in accordance with the terms hereof from time to time.

39. **Plan Supplement.** The schedules and forms of those documents, including the Creditors Trust Agreement (to the extent such documents have not otherwise been filed with the Bankruptcy Court) effectuating the transactions contemplated by this Plan, which documents shall be filed with the Clerk of the Bankruptcy Court no later than ten (10) days prior to the Voting Deadline. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected at the Office of the Clerk of the Bankruptcy Court during normal court hours or viewed on the Website

40. **Priority Claim.** A Priority Tax Claim or a Priority Non-Tax Claim.

41. **Priority Non-Tax Claim.** Any Claim against the Debtor to the extent entitled to priority in payment under sections 507(a)(4)-(7) or sections 507(a)(9)-(10) of the Bankruptcy Code.

42. **Priority Tax Claim.** Any Claim against the Debtor to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

43. **Professional Fee Claim.** Any Administrative Claim of a professional (representing any Debtor or the Chapter 11 Trustee) incurred before the Effective Date and approved by the Bankruptcy Court.

44. **Property.** All property rights and interests of the Debtor and all property of the Debtor's Estate, whether tangible or intangible, real or personal, including, without limitation, all cash and cash equivalents, tax refunds, equipment and Causes of Action and all proceeds thereof and further including, without limitation, all rights, powers, claims and defenses of the Debtor, its Estate as provided in the Bankruptcy Code and any other applicable law.

45. **Pro Rata Share.** With respect to distributions on Claims, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

46. **Secured Claim.** Any Claim that is secured by a lien which is not subject to avoidance under the Bankruptcy Code or is otherwise invalid under the Bankruptcy Code or applicable non bankruptcy law on property in which the Estate has an interest, or a Claim that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the holder's interest in the Estate's interest in such property, as determined by a Final Order. The amount of any Claim that

exceeds the value of the holder's interest in the Estate's interest in property shall be treated as an Unsecured Claim.

**47. Subordinated.** With reference to any Claim, Subordinated means a Claim, including an Unsecured Note Claim, that is subordinated in whole or part for purposes of distribution to Allowed Unsecured Claims under Section 510(c) of the Bankruptcy Code.

**48. Subsequent Distribution Date.** Any date after the Initial Distribution Date for distributions to be made to holders of Unsecured Claims as determined by the Creditors Trust.

**49. Chapter 11 Trustee.** Matthew Orwig, appointed by the United States Trustee on July 24, 2009 to serve as Chapter 11 Trustee.

**50. Unsecured Claim.** Any Claim relating to the provision of goods or services to the Debtor arising prior to the Petition Date, including, without limitation, Claims related to the rejection of executory contracts and leases, and Unsecured Note Claims.

**51. Unsecured Note Claims.** Any Unsecured Claim arising from or related to a note issued or guaranteed by the Debtor.

**52. United States Trustee Fees.** All fees and charges assessed against any Estate by the United States Trustee and due pursuant to section 1930 of title 28 of the United States Code.

**53. Voting Deadline.** The last date by which all Ballots must be returned to the Chapter 11 Trustee to be counted.

**54. Voting Record Date.** The record date as established by the Bankruptcy Court for determining which Persons in Class   are entitled to vote with respect to the Plan.

**Section 1.2.    Other Terms.**

Unless the context otherwise requires, any capitalized terms used and not defined herein or elsewhere in the Plan but that are defined in the Bankruptcy Code or Bankruptcy Rules will have the respective meanings set forth therein. Unless otherwise expressly stated in the Plan, the words "herein," "hereof," "hereto," "hereunder" and others of similar inference refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The term "including" shall not be deemed to be exclusive and shall be deemed to mean "including, without limitation." The singular use of any word as used herein shall include the plural and the plural shall include the singular whenever appropriate, and the use of any gender shall include all genders as appropriate.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

**Section 2.1.    Administrative Claims.**

Each holder of an Allowed Administrative Claim that has not been previously paid will be paid on the Effective Date or as soon thereafter as is practicable after such Administrative Claim becomes an Allowed Administrative Claim the full amount of such Allowed Administrative Claim in cash or on such terms as agreed to by the holder of the Administrative Claim, provided, however, that any Administrative Claim that is an Ordinary Course Administrative Claim may be paid in accordance with the ordinary business terms, in accordance with the agreement giving rise to the Claim or, in the case of a Claim asserted by a governmental unit, in accordance with applicable law.

**Section 2.2.**     **Administrative Claim Bar Date.**

The Administrative Claim Bar Date shall be forty-five (45) days after the Effective Date or such other date as may be set forth in the Confirmation Order. All requests for payment of Administrative Claims, other than Ordinary Course Administrative Claims and the United States Trustee Fees and Professional Fee Claims, but including any requests for payment of fees and/or reimbursement of expenses under Section 503(b) of the Bankruptcy Code, must be filed by the Administrative Claim Bar Date or such Administrative Claim shall be Disallowed and forever barred from receiving a distribution.

**Section 2.3.**     **United States Trustee Fees.**

United States Trustee Fees payable pursuant to 26 U.S.C. § 1930(a)(6) shall be paid on the Effective Date by the Chapter 11 Trustee. Any such fees accruing after the Effective Date but prior to the closing of the Chapter 11 Case shall be paid by the Creditors Trust.

**Section 2.4.**     **Professional Fee Claims.**

Each holder of Professional Fee Claim seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to Sections 330, 331 and 503(b)(2) of the Bankruptcy Code shall (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the date that is no later than forty-five (45) days after the Effective Date or such other date fixed by the Bankruptcy Court and (ii) if granted such an award by the Bankruptcy Court, be paid in cash in such amounts as are Allowed by the Bankruptcy Court within fourteen (14) days from the date of allowance by the Creditors Trust.

**Section 2.5.**     **Priority Tax Claims.**

Each Allowed Priority Tax Claim, if any, will be paid in full, in cash, on the Effective Date or as soon thereafter as is practicable after any such Claim is Allowed.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The categories of Claims and Interests listed below classify Allowed Claims and Allowed Interests for all purposes, including voting, confirmation, and Plan distributions.

**Section 3.1.**     **Class 1 Claims – Priority Non-Tax Claims.**

Class 1 consists of all Priority Non-Tax Claims.

**Section 3.2.**     **Class 2 Claims – Secured Claims.**

Class 2 consists of all Secured Claims.

**Section 3.3.**     **Class 3 Claims – Unsecured Claims**

Class 3 consists of all Unsecured Claims.

**Section 3.4.**     **Class 4 Claims – Subordinated Claims**

Class 4 consists of all Subordinated Claims.

**Section 3.5.**     **Class 4 - Equity Interests.**

Class 4 consists of all Equity Interests in FirstPlus.

## ARTICLE IV

## PROVISIONS FOR TREATMENT
## OF CLAIMS AND INTERESTS

**Section 4.1.** **Priority Non-Tax Claims.**

(i) <u>Treatment</u>. All Allowed Priority Non-Tax Claims not previously paid in full pursuant to Final Order of the Bankruptcy Court prior to Confirmation Date will be paid in full, in cash (except to the extent that the holder of such Claim agrees to a different treatment) on the Effective Date or as soon thereafter as is practicable after such Claim becomes an Allowed Priority Non-Tax Claim. The legal, equitable and contractual rights of the holders of Allowed Priority Non-Tax Claims are unaltered by the Plan.

(ii) <u>Voting</u>. Class 1 is unimpaired and the holders of Class 1 Claims are conclusively deemed to have accepted the Plan.

**Section 4.2.** **Secured Claims.**

(i) <u>Treatment</u>. Each holder of a Allowed Secured Claim shall receive such treatment as will render the Claim unimpaired within the meaning of Section 1124 of the Bankruptcy Code on the Effective Date except to the extent that the holder of such Claim agreed to different treatment.

(ii) <u>Voting</u>. Class 2 is not impaired and the holders of Allowed Secured Claims are conclusively deemed to have accepted the Plan.

**Section 4.3.** **Unsecured Claims.**

**Class 3.**

(i) <u>Treatment</u>. Except to the extent that the holder agrees to less favorable treatment, each holder of an Allowed Unsecured Claim shall receive in full satisfaction, settlement, and release of and in exchange for, such Allowed Claim, such holder's Pro Rata Share of cash distributed by the Creditors Trust in the time and manner as set forth in this Plan and the Creditors Trust Agreement.

(ii) <u>Voting</u>. Class 3 is impaired and the holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

**Section 4.4.** **Subordinated Claims.**Class 4.Treatment. The holders of Subordinated Claims shall not receive or retain any Property.

(ii) <u>Voting</u>. Class 4 is impaired and because the holders of Class 4 claims shall not receive or retain any Property, the holders of Allowed Class 4 will be deemed to have rejected the Plan.

**Section 4.5.** **Equity Interests**Class 5. <u>Treatment</u>. Each Class 5 Interest will be deemed canceled on the Effective Date.

(ii) <u>Voting</u>. Class 5 is impaired. Because holders of Equity Interests in Class 5 will neither receive nor retain any distribution or Property under the Plan on account of their Equity Interests, the holders will be deemed to have voted to reject the Plan.

## ARTICLE V

## PLAN IMPLEMENTATION

**Section 5.1.** **Distributions Under the Plan.**

(i) Distribution Record Date. As of the close of business on the Distribution Record Date, the various transfer registers or other applicable books and records for each of the Classes of Claims or Equity Interests as maintained by the Debtor or the Chapter 11 Trustee or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. The Chapter 11 Trustee and Creditor Trust, as the case may be, shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring on or after the Distribution Record Date. The Chapter 11 Trustee, as the case may be, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers or other applicable books and records of the Debtor or the Chapter 11 Trustee as of the close of business on the Distribution Record Date, to the extent applicable

(ii) First Distribution Date. On the Effective Date, the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Chapter 11 Trustee, to the extent practicable, shall make, or shall make adequate reserves for, the distributions required to be made under the Plan to holders of Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Non-Tax Priority Claims, which shall be held in the Administrative Claim Reserve.

**Section 5.2.** **Payments and Transfers by the Chapter 11 Trustee and the Creditors Trust on and After the Effective Date.**

(i) On the Effective Date, the Creditors Trust Assets, expressly including the Adversary Proceedings and all other Causes of Action, shall be deemed to have been transferred by the Debtor or the Chapter 11 Trustee to the Creditors Trust, free and clear of all liens, Claims, and encumbrances but subject to any obligations imposed by the Plan. In satisfaction of the requirements of Bankruptcy Code § 1129(a)(16), all transfers of property under this Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(ii) On or after the Effective Date, in the time and manner set forth herein, the Creditors Trust, on behalf of the Debtor and the Debtor's Estate, shall remit to the respective holders of all remaining and unpaid Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims, an amount in Cash equal to 100% of the amount of such Allowed Claim. Subject to the foregoing, on and after the Effective Date, the Creditors Trust shall satisfy all Allowed Class 3 Claims in the time and manner, and to the extent, as set forth in Article IV hereof from the applicable Creditor Trust Assets.

(iii) After the Effective Date, all remaining Allowed Administrative Claims (including all claims for Professional Fees relating to services rendered or reimbursement of expenses incurred through and including the Confirmation Date), and all post- Confirmation Date fees and expenses of Chapter 11 Trustee's professionals, and any and all Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims against the Debtor that were not paid in full on the Effective Date (if any) shall be paid by the Creditors Trust.

**Section 5.3.** **Creditors Trust.**

(i) Execution of the Creditors Trust Agreement. On or prior to the Effective Date, the Creditor Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Creditors Trust without any requirement of further action by the Chapter 11 Trustee or any governing body of the Debtor. This Plan Section 6.3 sets forth certain of the rights, duties, and obligations of the

Creditors Trust and the Trustee. In the event of any conflict between the terms of this Plan Section 6.2 and the terms of the respective Creditors Trust Agreement, the terms of the Plan shall govern.

(ii)     Purpose of the Creditors Trust.  The Creditors Trust shall be established for the sole purpose of liquidating and distributing it assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(iii)     The Creditors Trust Assets.

(a)     The Creditors Trust's res shall consist of the Creditors Trust Assets. Any Cash or other property received following the Effective Date by the Creditors Trust or the Estate from third parties from the prosecution, settlement, or compromise of any Adversary Proceedings or the other Causes of Action (including any proceeds from any insurance policies, if any), or otherwise shall constitute Creditors Trust Assets for purposes of distributions under the Creditors Trust. Any funds that had been retained by the Chapter 11 Trustee on the Effective Date and that are left over from reserves following the payment of all Allowed Administrative Claims, Allowed Professional Fees, Allowed Priority Non-Tax Claims, and Allowed Priority Tax Claims (determined by the Chapter 11 Trustee or the Creditors Trustee, as applicable) hereof, shall be transferred to the Creditors Trust as soon as is practicable following the payment of all such Claims, and shall thereafter constitute Creditors Trust Assets.

(b)     On the Effective Date or as soon thereafter as is practicable (1) the Chapter 11 Trustee in the manner set forth in Section 6.1 hereof) shall transfer all of the Creditors Trust Assets to the Creditors Trust free and clear of all liens, Claims, and encumbrances, except to any extent otherwise provided in the Plan, and (2) the Creditors Trust shall automatically be deemed the successor in interest for all purposes to the Debtor or the Chapter 11 Trustee in any then pending Adversary Proceeding or Cause of Action to the same extent as if the Creditors Trust were the Debtor or the Chapter 11 Trustee, without the need for any other or further order of the Bankruptcy Court or other court of competent jurisdiction.

(c)     Upon the transfer of the Creditors Trust Assets to the Creditors Trust, the Creditors Trustee shall be a representative of the consolidated Estate pursuant to Bankruptcy Code §§ l123(a)(5), 1123(a)(7), and 1123(b)(3)(B) with respect to the Creditors Trust Assets and **ALL OTHER CAUSES OF ACTION (INCLUDING, WITHOUT LIMITATION, ALL AVOIDANCE ACTIONS) SHALL SURVIVE CONFIRMATION AND CONSUMMATION OF THE PLAN AND THE COMMENCEMENT OR PROSECUTION OF ANY SUCH CLAIMS SHALL NOT BE BARRED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE.**

(iv)     The Creditors Trustee.  Matthew D. Orwig, not individually, but solely as a fiduciary for the Creditors Trust, shall be the Initial Trustee. The designation of the Chapter 11 Trustee as the Initial Trustee of the Creditors Trust shall be effective on the Effective Date without the need for (i) any further order of the Bankruptcy Court or (ii) any further action by any other governing body of the Debtors.

(v)     Role of the Trustee of the Creditors Trust.

(a)     In furtherance of and consistent with the purpose of the Creditors Trust and the Plan after payment in full of Allowed Class 1 and 2 Claims and Allowed Administrative Claims, the Trustee shall among other things (as may be set forth in the respective Creditors Trust Agreement), (1) have the power and authority to manage, invest, and distribute the Creditors Trust Assets to the holders of Allowed Class 3 Claims to the extent set forth in the Plan, (2) hold the respective Creditors Trust Assets for the benefit of the holders of Allowed Class 3 Claims to the extent set forth in the Plan, (3) have the power and authority to hold, manage, sell, and distribute Cash or other Creditors Trust Assets obtained through the exercise of its power and authority, (4) have the power and authority to prosecute, settle, and otherwise resolve, in the names and on behalf of the Debtor, its Estate, or the name of the Creditors Trust, the Adversary Proceedings and all other Causes of Action, including the power and authority to commence an Adversary Proceeding or other Cause of Action, (5) have the power and authority to

prosecute and resolve objections to any (or any portion thereof) in the name and on behalf of the Debtor, or its Estate, or the name of the Creditors Trust, and any Disputed Administrative Expense Claims, Disputed Priority Tax Claims, or Disputed Priority Non-Tax Claims, (6) have the power and authority to perform such other functions as are provided in the Plan and the Creditors Trust Agreements, (7) have the power and authority to retain and compensate professionals to assist it in performing the functions as provided in the Plan and the Creditors Trust Agreement, (8) have the power and authority to perform or delegate such other functions and services and duties as it deems reasonably necessary or appropriate, (9) have the power and authority to administer the closure of the Chapter 11 Case, and (10) have the power and authority to ensure that Debtor or the Estate completes any and all of the acts required by the Plan following the Effective Date, if any, and to otherwise take any and all reasonably necessary or appropriate steps to effectuate the dissolution of any of the Debtor pursuant to the terms of the Plan and applicable law. The Trustee of the Creditors Trust shall be responsible for all decisions and duties with respect to the Creditors Trust and the Creditors Trust Assets, subject to (a) the approval of the Bankruptcy Court after notice and a hearing (as appropriate), (b) the terms and conditions of the Creditors Trust Agreement. In all circumstances, the Creditors Trustee shall act in the best interests of the beneficiaries of the Creditors Trust and in furtherance of the purpose of the Creditors Trust.

(b)     After the certificates of cancellation, or dissolution for the Debtor have been filed, the Creditors Trustee shall be authorized to exercise all powers regarding the Debtor's tax matters, including filing tax returns, to the same extent as if the Creditors Trust was the Debtor. The Creditors Trust shall (A) complete and file to the extent not previously filed, the Debtor post-petition federal, state, and local tax returns, (B) request an expedited determination of any unpaid tax liability of such Debtor under Bankruptcy Code § 505(b) for all tax periods of such Debtor starting after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, to the extent not previously requested, and (C) represent the interests and account of such Debtor(s) before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

(vi)     Nontransferability of the Creditors Trust Interests.  Any and all beneficial interests in the Creditors Trust shall not be certificated and are not transferable by the holders thereof (except as may otherwise be provided in the respective Creditors Trust Agreement).

(vii)     Cash. The Creditors Trust may invest cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code § 345, provided, however, that such investments are investments permitted to be made by a litigation or similar trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(viii)     Costs and Expenses of the Creditors Trust. The costs and expenses of the Creditors Trust, including the fees and expenses of the Trustee and the professionals retained in accordance with Section 6.3(x) (including the costs and expenses incurred in connection with the pursuit of the respective Causes of Action), shall be paid out of the Creditors Trust Assets. All such costs and expenses shall be paid in the manner set forth in Plan and in the Creditors Trust Agreement.

(ix)     Compensation of the Creditors Trustee. The Trustee of the Creditors Trust shall be entitled to reasonable compensation and reimbursement of expenses upon Bankruptcy Court approval after notice and a hearing. On the Effective Date, or as soon thereafter as is practicable, the applicable Creditors Trust shall, subject to Bankruptcy Court approval after notice and a hearing.

(x)     Retention of Professionals by the Creditors Trusts.  The Creditors Trust  and the Trustee of the Creditors Trust may retain counsel and other professionals to provide professional services thereto, including in connection with the Plan or the respective Creditors Trust Agreement, without the need for any further Bankruptcy Court approval, including in connection with the prosecution or settlement of the Adversary Proceedings, all other Causes of Action, or objections to Disputed Claims against any of the Debtor. Without limiting the generality of the foregoing, Creditors Trust and the Trustee may retain any professional who previously represented any party-in-interest in this Chapter 11 Case on or prior to the Effective Date. The Creditors Trust shall compensate all such professionals in the manner set forth.in

Plan and in the Creditors Trust Agreement, in each instance subject to Bankruptcy Court approval upon the filing of an appropriate application with respect thereto by such professional.

(xi)  Distribution of the Creditors Trust Assets.

The Creditors Trust shall, at the discretion of the Trustee and if practicable, distribute at least semi-annually and in accordance with the Creditors Trust Agreement, commencing as soon as practicable on or after the Effective Date, the Creditors Trust Assets on hand, and treating as cash for purposes of this Section 6.2(1)(i) any permitted investments under Section 6.2(h) hereof), except such amounts (a) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is resolved), if any, (b) as are reasonably necessary to meet contingent liabilities (including with respect to any indemnification obligations owed to the Creditors Trustee, pursuant to the terms and conditions of the Plan and the Creditors Trust Agreement) and to maintain the value of the Creditors Trust Assets during liquidation, (c) necessary to pay anticipated future reasonable expenses (including, but not limited to, any taxes imposed on the Creditors Trust or in respect of the Creditors Trust Assets) as determined by the Creditors Trustee, and (d) to satisfy other anticipated liabilities (including a reasonable reserve for unanticipated future liabilities, fees, and expenses) to be incurred by the Creditors Trust in accordance with this Plan or the Creditors Trust Agreement.

(xii)  Federal Income Tax Treatment of the Creditors Trusts.

(a)  The Creditors Trust Assets shall be treated as owned by holders of Allowed Class 3 Claims. For all federal income tax purposes, all parties shall each treat the transfer of the Creditors Trust Assets to the Creditors Trust for the benefit of the holders of Allowed Class 3 Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the respective Creditors Trust Assets directly to the holders of Allowed Class 3 Claims in satisfaction of such Claims (other than to any extent allocable to Disputed Class 2 Claims followed by (B) the transfer by such holders to the Creditors Trust of the Creditors Trust Assets in exchange for beneficial interests in the Creditors Trust. Accordingly, the holders of such Allowed Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Creditors Trust Assets.

(xiii)  **Tax Reporting.**

(a)  As shall be set forth in the respective Creditors Trust Agreement, the Creditors Trust shall file returns as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.2(m)(ii). The Creditors Trust shall also annually send to each record holder of an Allowed Class 3 Claim a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the applicable beneficial holders of such Allowed Claim with instructions to report such items on their federal income tax returns. The Creditors Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to Section 6.2(m)(ii)(c) hereof) to the holders of Allowed Class 3 Claims to the extent provided for in the Plan, in accordance with their relative beneficial interests in the Creditors Trust.

(b)  As soon as possible after the Effective Date, but in no event later than ninety (90) days after the Effective Date, the Creditors Trust shall make a good faith estimate of the value of the respective Creditors Trust Assets. Such estimate of value shall be made available from time to time, to the extent relevant, and used consistently by all parties (including the Debtor, the Creditors Trust, and the holders of Allowed Class 3 Claims) for all federal income tax purposes. The Creditors Trust shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the respective Creditors Trust that are required by any governmental unit.

(xiv)  **Creditors Trust Claims Reserves.**

(a) Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Creditors Trust of a private letter ruling if the Creditors Trust so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Creditors Trust), the Creditors Trust shall (i) treat any Creditors Trust Asset allocable to, or retained on account of, Disputed Class 3 Claims (in an amount and manner as set forth in Plan Section 7.2(a)), if any, as held by one or more discrete trusts for federal income tax purposes (the "Creditors Trust Claims Reserve"), consisting of separate and independent shares to be established in respect of each Disputed Class 3 Claim, in accordance with the trust provisions of the Tax Code, (ii) treat as taxable income or loss of the Creditors Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Creditors Trust that would have been allocated to the holders of Disputed Class 3 Claims, if any, had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Creditors Trust Claims Reserve any increased amounts distributed by the Creditors Trust as a result of any Disputed Class 3 Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Creditors Trust Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All holders of Allowed Class 3 Claims shall report, for tax purposes, consistently with the foregoing.

(b) The Creditors Trust shall be responsible for payments, out of the applicable Creditors Trust Assets, of any taxes imposed on the Creditors Trust or the Creditors Trust Assets, including the Creditors Trust Claims Reserves. In the event, and to the extent, any cash (if any) retained on account of Disputed Class 3 Claims Creditors Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Class 3 Claims, such taxes shall be (i) reimbursed from any subsequent cash amounts (if any) retained on account of Disputed Class 3 Claims or (ii) to the extent such Disputed Class 3 Claims have subsequently been resolved, deducted from any amounts distributable by the Creditors Trust as a result of the resolutions of such Disputed Class 3 Claims .

(c) Prior to making a final distribution, dissolving the Creditors Trusts and closing the Debtor's Case, the Creditors Trustee may apply (i) to the Bankruptcy Court for an order authorizing final distribution, closing the Chapter 11 Case, and releasing the Creditors Trustee and the Creditors Trust from any and all claims, debts, or liabilities, including any and all claims, debts, or liabilities for taxes to any and all taxing authorities, and /or (ii) to the Bankruptcy Court, under section 505 of the Bankruptcy Code, the Internal Revenue Service and/or any other taxing authority for a determination of any tax liability payable by the Debtor or the Creditors Trust. The Trustee shall not be required to make a final distribution unless the Trustee determines that the Creditors Trust, the Debtor and the Trustee have no remaining liabilities for taxes of any kind.

(xv) <u>Dissolution</u>. The Trustee and the Creditors Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Disputed Class 3 Claims have been resolved, (ii) all of the applicable Creditors Trust Assets have been liquidated, and (iii) all distributions required to be made by the Creditors Trust under the Plan have been made, but in no event shall the respective Creditors Trusts be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the applicable Creditors Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Creditors Trust Assets or the dissolution of the Debtor.

(xvi) <u>Indemnification of the Trustee</u>. The Trustee and the Creditors Trusts' agents and professionals, shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the Creditors Trust, except upon a finding by the Bankruptcy Court that it or they acted or failed to act as the result of misfeasance, bad faith, gross negligence, or in reckless disregard of its or their duties and each

shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of, the Creditors Trust, except for any actions or inactions involving misfeasance, bad faith, gross negligence, or in reckless disregard of its or their duties. Any indemnification claim of the Trustee shall be satisfied from the Creditors Trust Assets, subject to the approval of the Bankruptcy Court after notice and a hearing. The Trustee shall be entitled to rely, in good faith, on the advice of retained professionals.

(xvii)    Closing of the Case.

(a)    When all Disputed Claims have become Allowed Claims, have been disallowed by a Final Order, or have been otherwise fully resolved, and all of the Creditors Trust Assets have been distributed in accordance with this Plan (including pursuant to Plan Section 6.2(1)(i)), the Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that nothing in this Plan or the Creditors Trust Agreement shall prevent the Creditors Trustee from seeking authority from the Bankruptcy Court to close the Chapter 11 Case at any time prior thereto, in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(b)    If at any time the Trustee determines that the expense of administering the Creditors Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Creditors Trust, the Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Case, (ii) donate any balance to a charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to any of the Debtor, the Creditors Trustee, and any insider of the Trustee, and (iii) close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules. Notice of such application shall be given electronically, to the extent practicable, to those parties who have filed requests for notices in the Chapter 11 Case and whose electronic addresses then remain current and operating.

(xviii)    Books and Records.  Upon the Effective Date, or as soon thereafter as is reasonably practicable, the Chapter 11 Trustee shall transfer and assign to the Creditors Trust full title to, and the Creditors Trusts shall be authorized to take possession of, all of the books and records of the Debtor or the Chapter 11 Trustee. The Creditors Trust shall have the responsibility of storing and maintaining the books and records transferred hereunder until the later of (i) one year after the Debtor is dissolved in accordance with Section 6.5 hereof or (ii) the resolution of each of the Adversary Proceedings or any other Cause of Action that is commenced prior to or after the Effective Date, after which time such books and records may, subject to the Effective Date, be abandoned or destroyed without further order of the Bankruptcy Court. For purposes of this Section 6.6, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data. The Chapter 11 Trustee shall also transfer and assign to the Creditors Trusts all of his claims and rights in and to their books and records that are maintained by, or in possession of, third parties (including any governmental entities), wherever located.

**Section 5.4.    Setoffs.**  The Chapter 11 Trustee or the Creditors Trust may, but shall not be required to, set off against any Claim (for purposes of determining t he Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtor may have against the holder of such Claim, but neither the failure to d o so nor the allowance of any Claim hereunder or under any order of the Bankruptcy Court shall constitute a waiver or release by the Debtor's, the Chapter 11 Trustee or the Creditor Trust of any such claim the Debtor may have against the holder of such Claim.

**Section 5.5.    Establishment and Maintenance of Disputed Claims Reserves.**

(i)    Administrative Claims Reserve.  On the Confirmation Date, the Chapter 11 Trustee shall provide a good faith estimate of the aggregate amount of unpaid Administrative Claims and shall establish an Administrative Claims Reserve in order to make the payments to holders of

Administrative Claims such Administrative Claims become Allowed and/or are scheduled to be paid pursuant to the Plan.

(ii)     Property in Trust.  Property placed in the Administrative Claims Reserve shall be held in trust for the benefit of the holders of Claims ultimately determined to be Allowed.  The Administrative Claims Reserve shall be closed and extinguished by the Creditor Trustee when all Distributions and other dispositions of cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of the Administrative Claims Reserve, all cash (including any investment yield on the cash) or other property held in that Disputed Reserve shall become the Property of the Creditors Trust.

(iii)    General Distribution Provisions; .  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, distributions to the holders of Allowed Claims shall be made by the Trustee of the Creditors Trust at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Debtor, or the Creditor Trust have been notified in writing of a change of address.

(iv)    Undeliverable Distributions.  In the event that any distribution to any holder of a Claim is returned as undeliverable, no further distributions shall be made to such holder unless and until the Chapter 11 Trustee or the Creditors Trust, as the case may be, are notified of such holder's then-current address. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution by 5:00 p.m. Central Time on the date that is one (1) year after the Effective Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such Claim against the Debtor, the Estate, the Property, the Creditors  Trust or its Trustee or its Property, the Chapter 11 Trustee,, or the property or assets of any of the foregoing. In such cases, any cash or other property otherwise reserved for undeliverable or unclaimed distributions shall become the property of the Creditors Trust on behalf of the Estate free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary, and shall be distributed in accordance with the terms of the Creditors Trust Agreement to the other holders of Allowed Class 3 Claims on a Pro Rata basis (subject to the terms and conditions of this Plan and the Creditor  Trust Agreement with respect to minimum distributions or otherwise). Nothing contained in this Plan or the Creditors  Trust Agreement shall require any of the Chapter 11 Trustee,  the Creditor Trust or its Trustee to attempt to locate any holder of an Allowed Claim.

(v)     Unclaimed Property.  Except with respect to Property not distributed because it is being held in a Reserve, distributions that are not claimed by the expiration of six (6) months from the date the distribution is made, will be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest in the Creditor Trust, and the Claims with respect to which those distributions are made shall be automatically cancelled.  After the expiration of that six (6) month period, the claim of any Person to those distributions shall be discharged and forever barred.

### Section 5.6.    Minimum Distributions.

Notwithstanding anything herein to the contrary, if a distribution to be made to a holder of an Allowed General Unsecured Claim on the Initial Distribution Date or any subsequent date for such Distributions would be $15 or less, no such Distribution is required to be made to that holder unless the holder makes a request in writing for payment from the Reorganized Debtor.

### Section 5.7.    Cancellation of Existing Securities.

On the Effective Date, any document, agreement or instrument evidencing a Claim against the Debtor or Equity Interest shall be deemed cancelled without any further act or action under the any applicable agreement, law, regulation, order or rule and the obligations of the Debtor under such documents, instruments or agreements evidencing such Claims or Equity Interests shall be discharged, except obligations under the Plan.

**Section 5.8.** **Timing.**

Wherever the Plan provides that a payment or distribution shall occur "on" any date, it shall mean "on, or as soon as practicable after" such date.

## ARTICLE VI

## TREATMENT OF DISPUTED CLAIMS

**Section 6.1.** **Objections to Claims.**

Objections to Claims shall be filed on or before the Claims Objection Bar Date by the Trustee or the Creditors Trust or other entity entitled to do so. All Claims shall be subject to section 502(d) of the Bankruptcy Code notwithstanding the expiration of the Claims Objection Bar Date. The failure by the Chapter 11 Trustee to object to, or to examine for purposes of voting, any Claim as of the Confirmation Date shall not be deemed to be a waiver of its right or the right of the Trustee or the Creditors Trust to object to, or to re-examine, such Claim in whole or in part after the Confirmation Date.

**Section 6.2.** **Payments and Distributions on Disputed Claims.**

Notwithstanding any other provision in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. As soon as practicable after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim will receive all distributions to which such holder is then entitled under the Plan. Except as provided in Bankruptcy Code section 502(d), any Person who holds both an Allowed Claim and a Disputed Claim will receive the appropriate distribution on the Allowed Claim, although no distribution will be made on the Disputed Claim until such dispute is resolved by settlement or Final Order.

**Section 6.3.** **Disallowance of Claims without Further Order of the Court.**

As of the Confirmation Date, any Claim designated as disputed, contingent or unliquidated in the Statement of Financial Affairs and Schedules filed by the Debtor, as amended, and for which a proof of claim has not been filed by the Creditor, shall be deemed expunged, without further act or Order of the Bankruptcy Court.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.1.** **Rejection of Executory Contracts and Unexpired Leases.**

Except as otherwise set forth herein, on the Effective Date, all executory contracts or unexpired leases of the Debtor will be deemed rejected in accordance with sections 365 and 1123 of the Bankruptcy Code, unless expressly assumed as identified on a list to be filed with the Bankruptcy Court on or before the Confirmation Date. Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to Bankruptcy Code sections 365(a) and 1123.

**Section 7.2.** **Rejection Claims.**

Allowed Claims arising from rejection of any executory contract or unexpired lease of the Debtors pursuant to the Plan shall be treated as Class 3 Unsecured Claims.

**Section 7.3.** **Bar Date for Rejection Claims**.

A proof of claim with respect to any Claim arising from rejection of any executory contract or unexpired lease of the Debtor pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received within thirty (30) calendar days after the Confirmation Date. The holder of any such Claim not timely filed and served shall be forever barred from asserting such Claim against any Debtor or its Estate and such Debtor's Estate shall be discharged from such Claims and the Reorganized Debtors shall not be obligated to pay such Claim.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**Section 8.1.** **Conditions Precedent to Effectiveness**.

The Plan shall not become effective unless and until the following conditions are satisfied or waived in accordance with this Article.

(a)     The Bankruptcy Court shall have entered the Confirmation Order, which shall approve the Plan on substantially the same terms and conditions set forth herein;

(b)     The Plan approved by the Bankruptcy Court pursuant to the Confirmation Order shall be form and substance satisfactory to the Chapter 11 Trustee;

(c)     No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section of the Plan are satisfied or waived;

(d)     The Creditors Trust Agreement and all documents, instruments and agreements provided for under, or necessary to implement, the Plan shall have been executed and delivered by the parties thereto, in form and substance satisfactory to the Chapter 11 Trustee, unless such execution or delivery has been waived by the parties benefited thereby and all such documents, Instruments and agreements shall be effective on the Effective Date;

(e)     All of the payments to be made by the Trustee or the Creditors Trust by or on the Effective Date shall have been made or shall be made on the Effective Date;

**Section 8.2.** **Satisfaction of Conditions**.

Any actions required to be taken on the Effective Date shall occur, or shall be deemed to have occurred, simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**Section 8.3.** **Failure of Conditions**.

In the event that one or more of the conditions precedent set forth in Section 9.1 hereof cannot be satisfied and the occurrence of such conditions is not waived on or before the date that is 180 days after the Confirmation Date, then the Chapter 11 Trustee shall file a notice of the failure of the Effective Date with the Bankruptcy Court and (i) the Confirmation Order shall be vacated by the Bankruptcy Court, (ii) the Plan shall be null and void in all respects, and no distributions under the Plan shall be made, (iii) Chapter 11 Trustee, Debtor, and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) the Debtor's obligations with respect to Administrative Expenses, Claims and Equity Interest shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a

waiver or release of any Claims or Equity Interests by or against the Debtor or any other Person or shall prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**Section 8.4.**     **Plan Modification.**

The Chapter 11 Trustee may alter, amend, or modify the Plan under Bankruptcy Code section 1127 and Bankruptcy Rule 3019 at any time before the Confirmation Date without an additional vote if the Bankruptcy Court finds, after notice and a hearing, that the proposed modification does not adversely change the treatment of any Class, Claim of any holder who has not accepted the modification in writing. After the Confirmation Date and before substantial consummation of this Plan, the Chapter 11 Trustee have the right to amend or modify the Plan in accordance with the Bankruptcy Code, if circumstances warrant amendment or modification and if, after notice and hearing, the Bankruptcy Court confirms the Plan as amended or modified.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

**Section 9.1.**     **Retention of Jurisdiction.**

The Bankruptcy Court will retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes:

    (a)     To consider Claims or the allowance, disallowance, classification, priority, estimation, subordination or payment of any Claim and any and all objections (in w hole or in part) thereto;

    (b)     to determine motions for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

    (c)     to hear, determine and resolve all applications, motions, Adversary Proceedings and contested or litigated matters including, without limitation, those related to all Causes of Action preserved by the Plan, whether pending on the Effective Date or commenced thereafter;

    (d)     to determine or otherwise resolve any and all matters under section 505 of the Bankruptcy Code with respect to any tax, fine, penalty or addition to tax asserted against the Debtor, or its Estate;

    (e)     to consider any Plan modifications, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court;

    (f)     to determine matters involving the Debtor or Chapter 11 Trustee in connection with actions taken or not taken by such Debtor or the Chapter 11 Trustee prior to confirmation of the Plan and matters involving the Chapter 11 Trustee or in connection with implementation and effectuation of the Plan, or the Confirmation Order;

    (g)     to determine all controversies, suits and disputes that may arise in connection with the interpretation, implementation, effectuation or consummation of the Plan or the Creditors Trust or the obligations under the Plan or the Creditors Trust;

    (h)     to determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with the Plan, the Confirmation Order, or the Creditors Trust Agreement;

(i)        to hear, determine and resolve any matters or issues arising with respect to or relating to any Orders entered by the Bankruptcy Court in any of this Chapter 11 Case;

(j)        to hear and determine any disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Creditor Trust, the Confirmation Order or the Creditors Trust Agreement;

(k)        to determine any and all applications for allowance of Professional Fees and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(l)        to enforce holders' rights to payments and to the delivery of money or other Property to which holders of Allowed Claims may be entitled under the Plan or the Creditors Trust Agreement;

(m)        to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan, or the Confirmation Order;

(n)        to issue orders in aid of execution of the Plan to the extent authorized by Bankruptcy Code section 1142; and

(o)        to enter a final decree closing the Chapter 11 Case.

## ARTICLE X

## RELEASES AND INJUNCTION

### Section 10.1.    Releases.

This Plan and the distributions made under the Plan will be in full and final satisfaction, settlement and release as against the Debtor of any debt that arose before the Effective Date and any debt of a kind specified in Bankruptcy Code sections 502(g), 502(h) or 5 02(i), and all Claims and Interests of any nature, including any interest accrued thereon, before, on and after the Petition Date, whether or not a (i) proof of Claim or Interest based on such debt, obligation or Interest was filed or deemed filed under sections 501 or 1111(a) of the Bankruptcy Code; (ii) such Claim or Interest is allowed under section 502 of the Bankruptcy Code; or (iii) the holder of such Claim or Interest has accepted the Plan.

### Section 10.2.    Injunction.

As of the Confirmation Date, except as provided in the Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is addressed in the Plan are permanently enjoined from taking any of the following actions on account of any such Claim, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Chapter 11 Trustee or Property of the Estate; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its Properties or the Chapter 11 Trustee; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its Properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Properties; and (v) commencing or continuing, in any manner or any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

### Section 10.3.    Exculpation.

The Chapter 11 Trustee and his employees, representatives, counsel, financial advisors, consultants and agents, shall not have or incur any liability to any Person for any act taken or omission

occurring on or after the Petition Date in connection with or related to the Debtor, or the Chapter 11 Case, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement, or any contract, instrument, release or other arrangement entered into or any action taken or not taken in connection with the Plan or the Chapter 11 Case; or (iii) any distributions made pursuant to the Plan except for acts constituting willful misconduct, gross negligence or breach of fiduciary duty, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS.

**Section 11.1.** **Substantial Consummation.**

On or after the Effective Date and upon transfer of Credit Trust Assets to the Creditors Trusts, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

**Section 11.2.** **Successors and Assigns.**

All the rights, benefits, and obligations of any person named or referred to in the Plan s hall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such person.

**Section 11.3.** **Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**Section 11.4.** **Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests and their respective successors and assigns.

**Section 11.5.** **Plan Controls.**

To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

**Section 11.6.** **Revocation or Withdrawal.**

(a) <u>Right to Revoke</u>. The Chapter 11 Trustee reserves the right to revoke or withdraw the Plan prior to the Effective Date.

(b) <u>Effect of Withdrawal or Revocation</u>. If the Chapter 11 Trustee revokes or withdraw the Plan prior to the Effective Date, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights any further proceedings involving the Debtor or its Estate.

**Section 11.7.** **Notices.**

Any notice required or permitted to be provided under the Plan or Disclosure Statement to the Chapter 11 Trustee shall be in writing and served by either (1) certified mail, return receipt requested,

postage prepaid, (2) hand delivery, or (3) reputable overnight delivery service, delivery prepaid, to be addressed as follows:

SNR DENTON US LLP
Jo Christine Reed
1221 Avenue of the Americas
New York, New York 10020

### Section 11.8. Limitations on Notice.

From and after the date the Plan becomes effective, notices of appearance and demands for service filed with the Bankruptcy Court shall no longer be effective. No further notice shall be required to be served on any Person based upon such notices of appearance or demands for service unless the Person files a renewed request for service of pleadings.

### Section 11.9. Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

Dated: _____, 2010

MATTHEW D. ORWIG

By:_____
Chapter 11 Trustee