## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FirstPlus Financial Group, Inc.** | § | **Case No. 09-33918 (HDH)** |
| | § | |
| **Debtor.** | § | |
| | § | |

## TRUSTEE'S FIRST AMENDED PLAN OF LIQUIDATION FOR
## FIRSTPLUS FINANCIAL GROUP, INC.

## DATED September 8, 2011

MATTHEW D. ORWIG
Chapter 11 Trustee


Peter Franklin
State Bar No. 07378000
Doug Skierski
State Bar No. 24008046
Erin K. Lovall
State Bar No. 24032553
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

Counsel for Matthew D. Orwig, Chapter 11 Trustee

## Table of Contents

**ARTICLE I DEFINITIONS** ................................................................................................. 4

**ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS** ................................... 10
    2.1.    Class 1 Claims – Priority Non-Tax Claims.................................................................. 10
    2.2.    Class 2 Claims – Secured Claims. ............................................................................... 10
    2.3.    Class 3 Claims – Unsecured Claims ........................................................................... 10
    2.4.    Class 4 Claims – Subordinated Claims........................................................................ 10
    2.5.    Class 5 - Equity Interests. .......................................................................................... 10

**ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS** ........................................... 11
    3.1.    Administrative Claims. ............................................................................................... 11
    3.2.    Administrative Claim Bar Date. ................................................................................. 11
    3.3.    United States Trustee Fees........................................................................................... 11
    3.4.    Professional Fee Claims. ............................................................................................. 11
    3.5.    Priority Tax Claims. .................................................................................................... 11

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ................. 12
    4.1.    Class 1 - Priority Non-Tax Claims.............................................................................. 12
    4.2.    Class 2 - Secured Claims. ........................................................................................... 12
    4.3.    Class 3 - Unsecured Claims. ....................................................................................... 12
    4.4.    Class 4 - Subordinated Claims. ................................................................................... 16
    4.5.    Class 5 - Equity Interests ............................................................................................ 16

**ARTICLE V PLAN IMPLEMENTATION** ........................................................................ 16
    5.1.    Impairment Controversies. .......................................................................................... 16
    5.2.    Classes and Claims Entitled to Vote............................................................................ 16
    5.3.    Cramdown.................................................................................................................... 16
    5.4.    Distributions Pursuant to the Plan............................................................................... 16
    5.5.    Payments and Transfers by the Chapter 11 Trustee and the Liquidating Trust on and
             After the Effective Date............................................................................................... 17
    5.6.    Liquidating Trust. ....................................................................................................... 17
    5.7.    Setoffs. ........................................................................................................................ 22
    5.8.    Establishment and Maintenance of Reserves.............................................................. 22
    5.9.    Minimum Distributions............................................................................................... 23
    5.10.   Cancellation of Existing Claims. ................................................................................ 23
    5.11.   Termination of Shareholder (Equity Interest) Rights. ................................................. 23

**ARTICLE VI TREATMENT OF DISPUTED CLAIMS** .................................................. 23
    6.1.    Objections to Claims. .................................................................................................. 23
    6.2.    Distributions on Disputed Claims. .............................................................................. 24
    6.3.    Disallowance of Claims without Further Order of the Court. ...................................... 24

**ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................... 24
    7.1.    Rejection of Executory Contracts. .............................................................................. 24
    7.2.    Rejection Claims. ........................................................................................................ 24
    7.3.    Bar Date for Rejection Claims. ................................................................................... 24

**ARTICLE VIII RETENTION OF LITIGATION, RIGHTS AND CAUSES OF ACTION** 25
    8.1.    Preservation of Causes of Action................................................................................ 25

**ARTICLE IX CONDITIONS PRECEDENT TO EFFECTIVE DATE** .............................. 26
    9.1     Conditions Precedent to Effectiveness......................................................................... 26
    9.2.    Satisfaction of Conditions............................................................................................ 27

| | | |
|---|---|---|
| 9.3. | Failure of Conditions. | 27 |
| 9.4. | Notice of the Effective Date. | 27 |
| 9.5. | Plan Modification. | 27 |
| **ARTICLE X RETENTION OF JURISDICTION** | | 28 |
| 10.1. | Retention of Jurisdiction. | 28 |
| 10.2. | Failure of Bankruptcy Court to Exercise Jurisdiction | 29 |
| **ARTICLE XI RELEASES AND INJUNCTION** | | 29 |
| 11.1. | Releases. | 29 |
| 11.2. | Injunction. | 29 |
| 11.3. | Exculpation. | 30 |
| **ARTICLE XII MISCELLANEOUS PROVISIONS.** | | 30 |
| 12.1. | Substantial Consummation. | 30 |
| 12.2. | Successors and Assigns. | 30 |
| 12.3. | Headings. | 31 |
| 12.4. | Binding Effect. | 31 |
| 12.5. | Plan Controls. | 31 |
| 12.6. | Revocation or Withdrawal. | 31 |
| 12.7. | Notices. | 31 |
| 12.8. | Limitations on Notice. | 31 |
| 12.9. | Governing Law. | 32 |
| 12.10. | No Liability for Solicitation or Participation. | 32 |
| 12.11. | Term of Injunctions and Stays. | 32 |
| 12.12. | Incorporation of Bankruptcy Rule 9019. | 32 |
| 12.13. | Incorporation of 11 U.S.C. § 363. | 32 |
| 12.14. | Exemption from Transfer Taxes and Recording Fees. | 32 |
| 12.15. | Incorporation of 11 U.S.C. § 365. | 33 |
| 12.16. | No Admissions. | 33 |
| 12.17. | Severability. | 33 |
| 12.18. | Other Documents and Actions. | 33 |
| **ARTICLE XIII CONFIRMATION REQUEST** | | 34 |

**ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THE PLAN, THE DISCLOSURE STATEMENT AND RELATED SOLICITATION MATERIALS IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I

### DEFINITIONS

**1.1    Rules of Interpretation.**    Unless otherwise specified, all article, section, paragraph, and exhibit references in this Plan are to the respective section in, paragraph of, or exhibit to this Plan, as the same may be amended, waived or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply**.** Unless the context otherwise required, any capitalized terms used and not defined herein or elsewhere in the Plan but that are defined in the Bankruptcy Code or Bankruptcy Rules will have the respective meanings set forth therein. Unless otherwise expressly stated in the Plan, the words "herein," "hereof," "hereto," "hereunder" and others of similar inference refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The term "including" shall not be deemed to be exclusive and shall be deemed to mean "including, without limitation." The singular use of any word as used herein shall include the plural and the plural shall include the singular whenever appropriate, and the use of any gender shall include all genders as appropriate.

**1.2    "Administrative Claim"** means a Claim for any cost or expense of administration of the Bankruptcy Case under 11 U.S.C. § 503(b), including, without limitation, Professional Fee Claims and any fees or charges assessed against the Estate of the Debtor pursuant to 28 U.S.C. § 1930.

**1.3    "Allowed"** means: (a) any Claim against the Debtor that has been listed in the Schedules filed as liquidated in an amount greater than zero dollars and not disputed or contingent, and for which no contrary Proof of Claim has been filed and as to which no timely objection has been interposed; (b) except as provided in the Plan, any Claim (including any Administrative Claim that is not a Professional Fee Claim) as to which a Proof of Claim has been timely filed by the applicable deadline and (i) no objection to the allowance thereof has been timely interposed on or before the Claims Objection Bar Date (or, if applicable, the Administrative Claim Bar Date) and (ii) such Claim has not (as applicable) been withdrawn, paid in full (pursuant to a prior order of the Bankruptcy Court or otherwise), or otherwise deemed satisfied in full; (c) any Claim as to which any objection thereto or other motion to disallow, estimate, or expunge, in whole or in part, or any Litigation against the holder thereof, was filed or commenced (as applicable) but is no longer pending and instead has been determined by a Final Order in favor of the respective Claim holder (but solely to the extent and amount such Claim has been so determined in the applicable Final Order), or any such objection, motion to disallow, estimate, or expunge, or Litigation (as applicable) has been settled, waived through payment, or withdrawn; (d) any Claim that has otherwise been resolved, settled, or otherwise deemed allowed by a Final Order; (e) any Claim as to which, upon the lifting of the automatic

stay pursuant to 11 U.S.C. § 362, the liability of the Debtor, allowance, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (f) any Claim that is expressly deemed an Allowed Claim under the Plan. Unless otherwise ordered by the Bankruptcy Court prior to the entry of the Confirmation Order, or as specifically provided to the contrary in this Plan with respect to any particular Claim, an "Allowed" Claim shall not include (i) any interest on such Claim to the extent accruing or maturing on or after the Petition Date, (ii) any punitive or exemplary damages, or (iii) any claims for any fine, penalty, or forfeiture. Nothing in this Plan shall prevent the Chapter 11 Trustee or the Liquidating Trust from objecting to Claims after the Confirmation Date.

**1.4** **"Allowed Administrative Claim"** means: (i) an Administrative Claim (including a Professional Fee Claim) that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to allow same; or (ii) an Administrative Claim which: (a) is incurred by the Debtor after the Petition Date in the ordinary course of its business operations or pursuant to an order entered by the Bankruptcy Court granting automatic administrative claim status; (b) is not disputed by the Debtor, the Chapter 11 Trustee, or the Liquidating Trustee; and (c) does not require approval from the Bankruptcy Court to become Allowed.

**1.5** **"Allowed Priority Claim"** means a Priority Claim that has been Allowed (but only to the extent Allowed).

**1.6** **"Allowed Secured Claim"** means a Secured Claim Allowed by Final Order of the Bankruptcy Court under section 506(a) of the Bankruptcy Code, but only to the extent, validity, and priority as are so Allowed.

**1.7** **"Avoidance Actions"** means any and all rights, claims or actions which the Debtor, Chapter 11 Trustee or Liquidating Trustee may assert on behalf of the Estate under chapter 5 of the Bankruptcy Code, including actions pursuant to one or more provisions of 11 U.S.C. §§ 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553, except to the extent that any such rights, claims, or actions are released or waived in the Plan.

**1.8** **"Ballot"** means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each holder of a Claim entitled to vote to accept or reject the Plan.

**1.9** **"Bankruptcy Code"** means 11 U.S.C. §§ 101, *et seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

**1.10** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Texas, or, if such court ceases to exercise jurisdiction over the Chapter 11 Case, the court that exercises jurisdiction over the Chapter 11 Case.

**1.11** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended from time to time, and the local rules of the Bankruptcy Court.

**1.12** **"Bar Date"** means October 27, 2009, the date set by the Bankruptcy Court as the final date for filing Claims, except for governmental units. The date set for governmental units to file proofs of claim was December 26, 2009.

**1.13** **"Business Day"** means any day other than a Saturday, Sunday or other day on which commercial banks in Dallas, Texas are authorized or required by law to close.

**1.14** **"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code, commenced on June 23, 2009, captioned above, together with all of the proceedings held therein and all actions taken in connection therewith.

**1.15** **"Chapter 11 Trustee"** means Matthew D. Orwig, in his capacity as Chapter 11 Trustee, as appointed by the United States Trustee on July 24, 2009, from the date of his appointment through the Effective Date of this Plan.

**1.16** **"Claim"** means a claim against the Debtor, the Estate, and/or property of the Debtor or the Estate, as such term is defined in 11 U.S.C. § 101(5).

**1.17** **"Claim Objection Bar Date"** means the deadline for filing Claim objections, which shall be the first business day that is at least ninety (90) days after the Effective Date.

**1.18** **"Class"** means a category or group of holders of Claims or Interests as designated in Article III of this Plan pursuant to 11 U.S.C. § 1122(a)(i).

**1.19** **"Confirmation Date"** means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order.

**1.20** **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court pursuant to 11 U.S.C. § 1128 and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be continued from time to time.

**1.21** **"Confirmation Order"** means an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.22** **"Debtor"** means FirstPlus Financial Group, Inc.

**1.23** **"Disallowed Claim"** means a Claim or portion thereof that (i) has been disallowed by a Final Order; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated, and/or disputed and as to which a proof of Claim was not timely filed by the Bar Date or by the Debtor within the time prescribed by the Bankruptcy Code; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed by the Bar Date or by the Debtor within the time prescribed by the Bankruptcy Code.

**1.24** **"Disclosure Statement"** means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of the Plan, or as it may be altered, amended or modified from time to time in accordance with 11 U.S.C. §§ 1125, 1126(b) and 1145, Bankruptcy Rules 3016 and 3017, and the Local Rules of the Bankruptcy Court.

**1.25** "**Disputed Claim**" means any Claim, or any portion thereof, which has not become Allowed and which is not a Disallowed Claim. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the party responsible for the payment thereof, the objecting party, and the holder thereof agree otherwise or unless otherwise ordered by the Bankruptcy Court; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under 11 U.S.C. § 502(c). Without limiting any of the foregoing, but subject to the provisions of the Plan, a Claim that is the subject of a pending application, motion, complaint, Litigation, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim shall be deemed to constitute a Disputed Claim unless and until the entry of a Final Order providing otherwise.

**1.26** "**Distribution Date**" means any date the Plan or the Liquidating Trust shall establish for making distributions consistent with the terms of the Plan.

**1.27** "**Effective Date**" means the first Business Day which is fifteen (15) days after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions to effectiveness specified in Article IX of this Plan have been satisfied or waived.

**1.28** "**Equity Interest**" or "**Interest**" means any issued, unissued, authorized or outstanding stock, membership interest and any other equity security, as defined in 11 U.S.C. § 101(16) in the Debtor including, without limitation, and any and all (i) shares, (ii) securities, options, warrants, rights, calls, subscriptions, agreements, commitments, conversion rights, or understandings of any nature whatsoever, fixed or contingent, that directly or indirectly (a) call for the issuance, redemption, sale, pledge or other disposition of any shares of stock of the Debtor or securities convertible into, or other rights to acquire stock of the Debtor, (b) obligate the Debtor to grant, offer or enter into any of the foregoing, or (c) "phantom stock," stock appreciation rights or other similar rights the value of which is related to or based upon the price or value of any class or series of stock of the Debtor.

**1.29** "**Estate**" means the estate created in the Chapter 11 Case pursuant to 11 U.S.C. § 541.

**1.30** "**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date, as such terms are used within 11 U.S.C. § 365.

**1.31** "**Final Order**" means (a) an order for which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review, or to move for re-argument, rehearing, or reconsideration, has expired, and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for re-argument, rehearing, or reconsideration, shall then be pending; (b) an order for which any right to appeal, petition for writ of certiorari, or move for re-argument or rehearing or reconsideration shall have been waived in writing by any person with such right; or (c) in the event that an appeal, writ of certiorari, or other appellate review or re-argument, rehearing, or reconsideration thereof has been sought, an order that shall have been affirmed by the highest court to which such order was appealed or from which writ of certiorari or other appellate review or re-argument, rehearing, or reconsideration was sought, and as to

which, the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, or to move for re-argument, rehearing, or reconsideration shall have expired; provided, however, that the possibility that a motion under rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or the Local Rules of the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.32 "**Liquidating Trust**" means the trust established under the Plan according to the Liquidating Trust Agreement for the benefit of the Debtor.

1.33 "**Liquidating Trustee**" means Matthew D. Orwig, in his capacity as Trustee for the Liquidating Trust, from the Effective Date of this Plan forward.

1.34 "**Liquidating Trust Agreement**" means the agreement governing the Liquidating Trust, dated as of the Effective Date, substantially in the form attached hereto as Exhibit 1.

1.35 "**Liquidating Trust Assets**" means (a) all claims or causes of action listed in the Debtor's Schedules and/or initiated by the Chapter 11 Trustee prior to the Effective Date (including the Litigation) and the net proceeds thereof; (b) all Other Causes of Action; (c) all Cash on hand; and (d) all other Property of the Debtor and/or its Estate as of the Effective Date and the proceeds thereof that were not transferred, sold, distributed, abandoned, waived, or disposed of in any way by the Chapter 11 Trustee prior to the Effective Date.

1.36 "**Litigation**" means any litigation commenced by the Chapter 11 Trustee and pending on the Effective Date against any third party, including, but not limited to, the adversary proceeding styled and numbered *Matthew D. Orwig, as Chapter 11 Trustee of FirstPlus Financial Group, Inc., Plaintiff, v. Robert Freeman; James Roundtree; Daniel Phillips; David Ward; John Fitzgerald; John Maxwell; William Handley; Dr. Robert O'Neal; Jack Roubinek; Gary D. Alexander; Roger S. Meek; David Roberts; Joseph P. Steward; William Hickman; Paul Ballard; Olshan Grundman Frome Rosenzweig & Wolosky LLP; David Adler, Esq.; Eizen Fineburg & Mccarthy P.C.; Gary J. Mccarthy, Esq.; William T. Maxwell, Esq.; William Maxwell PLLC; William T. Maxwell, P.C.; Buckno Lisicky & Company, P.C.; Anthony Buczek, CPA; Siegal & Drossner, P.C.; Howard Drossner, CPA; Kensington Company & Affiliates, Inc.; Ken Stein; Salvatore Pelullo; Seven Hills Management, LLC; Learned Associates of North America, LLC; and Nicodemo S. Scarfo, Jr., Defendants*; Adv. Pro. No. 11-03397.

1.37 "**Ordinary Course Administrative Claims**" means any Unsecured Claim relating to the provision of goods or services to the Debtor or the Chapter 11 Trustee held by persons or entities with whom the Debtor or the Chapter 11 Trustee is conducting business on or after the Petition Date or entitled to administrative priority by order of the Bankruptcy Court or any Claim by a governmental unit under 11 U.S.C. §§ 503(b)(1)(B) and (C).

1.38 "**Other Causes of Action**" means any and all rights, claims, objections to Claims and causes of action of the Debtor, its bankruptcy Estate, whether known or unknown, in law, equity or otherwise, including Chapter 5 causes of action.

**1.39** **"Person"** means any individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization or government or subdivision thereof or other entity.

**1.40** **"Petition Date"** means June 23, 2009, the date on which the Debtor filed its petition under Chapter 11.

**1.41** **"Plan"** means this Trustee's First Amended Plan of Liquidation, either in its present form or as it may be further amended, supplemented, or modified from time to time.

**1.42** **"Priority Claim"** means a Priority Tax Claim or a Priority Non-Tax Claim.

**1.43** **"Priority Non-Tax Claim"** means any Claim against the Debtor to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(4)-(7) or 507(a)(9)-(10).

**1.44** **"Priority Tax Claim"** means any Claim against the Debtor to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(8).

**1.45** **"Professional Fee Claim"** means any Administrative Claim of a professional (representing the Chapter 11 Trustee) incurred before the Effective Date and approved by the Bankruptcy Court.

**1.46** **"Property"** means all property of the Debtor's Estate, as defined in 11 U.S.C. § 541, including without limitation all property rights and interests of the Debtor and all property of the Debtor's Estate, whether tangible or intangible, real or personal, including, without limitation, all cash and cash equivalents, tax refunds, equipment and Other Causes of Action, Litigation, and all proceeds thereof and further including, without limitation, all rights, powers, claims and defenses of the Debtor, its Estate as provided in the Bankruptcy Code and any other applicable law, including, without limitation, the right to receive payments from the FPFI Liquidating Trust.

**1.47** **"Pro Rata Share"** means the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.48** **"Rejection Claim"** means a Claim arising under 11 U.S.C. § 502(g) as a consequence of the rejection of any Executory Contract.

**1.49** **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor or the Chapter 11 Trustee in the Bankruptcy Case, as they have been or may be amended or supplemented from time to time by the Chapter 11 Trustee.

**1.50** **"Secured Claim"** means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtor or the Estate to the extent such lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance or subordination under the Bankruptcy Code or other applicable non-bankruptcy law; or (ii) as a result of rights of setoff under 11 U.S.C. § 553.

**1.51** "**Subordinated**" means a Claim, including an Unsecured Note Claim, which is subordinated in whole or part for purposes of distribution to Allowed Unsecured Claims under 11 U.S.C. § 510(c).

**1.52** "**Unsecured Claim**" means any Claim relating to the provision of goods or services to or arising from a contract with the Debtor arising prior to the Petition Date, including, without limitation, Claims related to the rejection of Executory Contracts and Unsecured Note Claims.

**1.53** "**Unsecured Note Claims**" means any Unsecured Claim arising from or related to a note issued or guaranteed by the Debtor.

**1.54** "**United States Trustee Fees**" means all fees and charges assessed against any Estate by the United States Trustee and due pursuant to 28 U.S.C. § 1930.

**1.55** "**Voting Deadline**" means the date established by the Court by which all Ballots must be returned to the Chapter 11 Trustee to be counted.

**1.56** "**Voting Record Date**" means the record date as established by the Bankruptcy Court for determining which Persons are entitled to vote with respect to the Plan.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

The categories of Claims and Interests listed below classify Allowed Claims and Allowed Interests for all purposes, including voting, confirmation, and Plan distributions.

**2.1.** **Class 1 Claims – Priority Non-Tax Claims.**

Class 1 consists of all Priority Non-Tax Claims.

**2.2.** **Class 2 Claims – Secured Claims.**

Class 2 consists of all Secured Claims.

**2.3.** **Class 3 Claims – Unsecured Claims**

Class 3(a) consists of all General Unsecured Claims.

Class 3(b) consists of all Unsecured Claims of members of the Shareholder Class

**2.4.** **Class 4 Claims – Subordinated Claims**

Class 4 consists of all Subordinated Claims.

**2.5.** **Class 5 - Equity Interests.**

Class 5 consists of all Equity Interests in the Debtor.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS

**3.1.  Administrative Claims.**

Each holder of an Allowed Administrative Claim that has not been previously paid will be paid in full in cash on the latest of: (i) within seven (7) days of the Effective Date; (ii) within fifteen (15) days of becoming an Allowed Administrative Claim; or (iii) on such other less favorable terms as may be agreed upon by the holder of the Allowed Administrative Claim and the Chapter 11 Trustee or the Liquidating Trustee, provided, however, that any Administrative Claim that is an Ordinary Course Administrative Claim may be paid in accordance with the ordinary business terms, in accordance with the agreement giving rise to the Claim or, in the case of a Claim asserted by a governmental unit, in accordance with applicable law.

**3.2.  Administrative Claim Bar Date.**

The Administrative Claim Bar Date shall be that date that is forty five (45) days after the date upon which the Chapter 11 Trustee or Liquidating Trustee files and serves the Notice of Effective Date as set forth in section 9.4 of this Plan.  All requests for payment of Administrative Claims, other than (i) Ordinary Course Administrative Claims and (ii) United States Trustee Fees must be filed by the Administrative Claim Bar Date or such Administrative Claim shall be Disallowed and forever barred from receiving a distribution.  The Chapter 11 Trustee is not aware of any Ordinary Course Administrative Claims.

**3.3.  United States Trustee Fees.**

United States Trustee Fees payable pursuant to 26 U.S.C. § 1930(a)(6) shall be paid within seven (7) days of the Effective Date by the Chapter 11 Trustee.  Any such fees accruing after the Effective Date but prior to the closing of the Chapter 11 Case shall be paid by the Liquidating Trust as they become due.

**3.4.  Professional Fee Claims.**

Each holder of a Professional Fee Claim seeking compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to 11 U.S.C. §§ 330, 331 and 503(b)(2) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Administrative Claim Bar Date.  Any fees or expenses approved by the Bankruptcy Court shall be paid in full in cash by the Liquidating Trust within fifteen (15) days of the date of allowance.

**3.5.  Priority Tax Claims.**

Any Allowed Priority Tax Claim will be paid in full in cash by the Debtor or the Liquidating Trust by the latest of: (i) seven (7) days after the Effective Date; or (ii) fifteen (15) days of becoming an Allowed Priority Tax Claim.

# ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

The categories of Claims and Interests listed below classify Allowed Claims and Allowed Interests for all purposes, including voting, confirmation, and Plan distributions.

**4.1.    Class 1 - Priority Non-Tax Claims.**

(i)    <u>Treatment</u>.  Priority Claims shall be reviewed by the Chapter 11 Trustee or the Liquidating Trustee, as appropriate, and shall be objected to or not, in the discretion of the applicable Trustee.  Upon becoming an Allowed Priority Claim, each holder of an Allowed Priority Claim shall receive in exchange for and in full satisfaction of such Claim: (a) the amount of such Allowed Priority Claim, in cash, by the latest of (i) seven (7) days after the Effective Date or (ii) the date that is fifteen (15) days after such Claim becomes an Allowed Priority Claim; or (b) the time dictated by such other treatment as may be agreed upon in writing by the holder of such Claim and the Chapter 11 Trustee or the Liquidating Trustee, as applicable.

(ii)    <u>Voting</u>.  Class 1 is unimpaired and the holders of Class 1 Claims are conclusively deemed to have accepted the Plan.

**4.2.    Class 2 - Secured Claims.**

(i)    <u>Treatment</u>.  Secured Claims shall be reviewed by the Chapter 11 Trustee or the Liquidating Trustee, as appropriate, and shall be subject to objection by either of them.  Upon becoming an Allowed Secured Claim, each holder of an Allowed Secured Claim shall receive in exchange for and in full satisfaction of such Claim: (a) the amount of such Allowed Secured Claim, in cash, on or as soon as practicable after the latest of (i) seven (7) days after the Effective Date, or (ii) the date that is fifteen (15) days after such Claim becomes an Allowed Secured Claim; (b) all collateral securing such Allowed Secured Claim; or (c) such other treatment as may be agreed upon in writing by the holder of such Claim and the Chapter 11 Trustee or the Liquidating Trustee, as applicable.

(ii)    <u>Voting</u>.  Class 2 is not impaired and the holders of Allowed Secured Claims are conclusively deemed to have accepted the Plan.

**4.3.    Class 3 - Unsecured Claims.**

(i)    <u>Class 3(a) Treatment.</u>  Class 3(a) Unsecured Claims shall be reviewed by the Chapter 11 Trustee or the Liquidating Trustee, as appropriate, and shall be subject to objection by either of them.  Each holder of an Allowed Unsecured Claim shall receive in full satisfaction, settlement, and release of and in exchange for such Allowed Claim, such holder's Pro Rata Share of cash distributed by the Liquidating Trust to the holders of Allowed Unsecured Claims pursuant to the terms of this Plan.

(ii)    <u>Class 3(a) Voting.</u>  Class 3(a) is impaired and the holders of Allowed Class 3(a) Claims are entitled to vote to accept or reject the Plan.

(iii) <u>Class 3(b) Treatment</u>. If the Chapter 11 Trustee's proposed settlement with the proposed Shareholder Class is approved by the Bankruptcy Court, distributions shall be made to the Shareholder Representative based upon the breach of contract claim asserted by the Shareholder Class. The Shareholder Representative shall receive, on behalf of the holders of Shareholder Claims, in full satisfaction, settlement, and release of and in exchange for such Allowed Claims, a Pro Rata Share of cash distributed by the Liquidating Trust for payment to holders of Allowed Unsecured Claims based upon the proof of claim filed by James Hansen, as putative representative of the proposed Shareholder Class. All other proofs of claim filed by members of the Shareholder Class shall be disallowed and no distribution shall be made on account of those Interests. If the compromise is not approved, the members of the Shareholder Class shall be deemed to be holders of Class 5 Equity Interests and shall be accorded treatment as such.

In March 2005, a group of the Debtor's shareholders commenced a court action, styled *Danford L. Martin, et. al. v. FirstPlus Financial Group, Inc., et. al.*, in the Second Judicial District Court for the State of Nevada (the "<u>Nevada Action</u>") to compel a shareholders' meeting and election of directors.

On February 13, 2009, James Hanson ("<u>Hanson</u>"), commenced an action in the Second Judicial District Court of the State of Nevada, County of Washoe against the Debtor, Does 1-100 and Black and White Companies 101-200 for, among others things, breach of the Settlement Agreement, specific performance and the appointment of a receiver (the "<u>Hanson Action</u>"). On March 26, 2009, Hanson filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to enjoin the dissipation of any funds received by the Debtor or the Grantor Trust from the FPFI Liquidating Trust and to deposit any such funds in the registry of the Nevada court. On April 10, 2009, the Nevada court entered a Preliminary Injunction enjoining the dissipation of any funds held by the Debtor and/or the Grantor Trust and ordered that any funds in their possession be immediately deposited into the Court registry.

Following entry of the Nevada court's preliminary injunction, the Debtor remitted $1,196,402.83 to the Nevada court registry.[1] Moreover, as a result of the preliminary injunction, future distributions from the FPFI Liquidating Trust were safeguarded from dissipation by the Debtor and those in control of the Debtor, thereby preserving funds for distribution to the Debtor's rightful creditors.

On or about September 17, 2009, Hanson, as putative class representative, filed a proof of claim on behalf of all shareholders (the "<u>Shareholder Class</u>") in the amount of $8,557,689.83 for breach of the settlement agreement (the "<u>Breach Claim</u>") [Claim No. 73].

In an effort to resolve the disputes surrounding the Hanson Action and the Breach Claim, Hanson's counsel and the Chapter 11 Trustee engaged in arm's length and good-faith negotiations resulting in a proposed settlement (the "<u>Proposed Settlement</u>"), which would have resolved the Hanson Action and all issues between the Debtor and the Shareholder Class. The Chapter 11 Trustee filed a "*Motion Pursuant to Section 502(a) of the Bankruptcy Code to Allow Claim for Breach of Contract and Rule 9019 of the Federal Rules of Bankruptcy Procedure to*

---

[1] The funds remitted to the Nevada Court registry were subsequently transferred to the Chapter 11 Trustee.

*Approve Settlement and Compromise*" (the "Settlement Motion") seeking the Court's approval of the Proposed Settlement on January 12, 2011 [Dckt. No. 515].

After the Settlement Hearing, on March 29, 2011, the Bankruptcy Court entered its "*Order on Motion to Compromise*" denying without prejudice approval of the Initial Settlement. [Dckt. No. 557]. The Bankruptcy Court denied the Settlement Motion because it found that there was no evidence that Hanson spoke for the Shareholder Class (or anyone other than himself) and that there was no evidence of "substantial contribution" justifying the payment of Hanson's counsel's fees by the Debtor's Estate. However, the Bankruptcy Court also overruled all other objections to the Proposed Settlement and found that the Proposed Settlement was "fair and equitable."

After the entry of the order denying the Settlement Motion, the Chapter 11 Trustee continued discussions with Hansen in order to try to overcome the shortcomings in the Proposed Settlement. As a result of those discussions, the Chapter 11 Trustee now proposes a new compromise (the "Compromise") regarding the Hanson Action and the Breach Claim and is cooperating with Hanson to resolve the issues with the Proposed Settlement. The Chapter 11 Trustee is seeking approval of the Compromise as a part of the Plan.

The terms of the proposed Compromise are as follows:

- Agreed Lift Stay. Hanson and the Chapter 11 Trustee (the "Parties") will file a "*Joint Motion to Approve Agreement to Modify the Automatic Stay to Allow Nevada State Court to Proceed with Class Certification Matters and Allow Class Representatives to Represent the Class Members*" in the Chapter 11 Case (the "Lift Stay Motion"). In the Lift Stay Motion, the Parties will request that the Bankruptcy Court lift or modify the automatic stay and approve the following agreement (the "Lift Stay Agreement"):

  o Hanson may request that the Nevada Court certify the Shareholder Class and similarly situated parties as a class;

  o the Shareholder Class, if certified, may request that the Nevada Court appoint Hanson and others as class representatives (the "Shareholder Representatives");

  o Hanson and the Shareholder Class may request that the Nevada Court appoint class counsel;

  o the Shareholder Representatives may pursue the Breach Claim on behalf of the Shareholder Class in the Chapter 11 Case;

  o the Shareholder Representatives shall establish any necessary class notice procedures;

  o the Shareholder Representatives shall appoint and supervise a claims agent to receive and distribute to members of the Shareholder Class all payments made by the Liquidating Trust with respect to the Breach Claim;

  o the Shareholder Representatives shall approve a class representation fee to be paid by the claims agent out of any such payments;

- o the Shareholder Representatives shall conduct any and all activities necessary or appropriate to accomplish these procedural matters; and

- o once the Nevada Court certifies the Shareholder Class and Shareholder Representatives, the Bankruptcy Court order that the Shareholder Representatives may receive notice for the Shareholder Class and may generally appear for the Shareholder Class and its members in the Chapter 11 Case;

- Allowed Claim. The Shareholder Class shall have an allowed claim in the amount of $8,557,689.83 (the amount stated in the Breach Claim). The Breach Claim shall be classified as Class 3(b) and paid its Pro Rata Share with other Allowed Unsecured Claims in Class 3;

- Substitution of Breach Claim. The Breach Claim, once allowed, will be deemed to replace and supersede all claims filed by shareholders and all other claims by other shareholders will be deemed to be Disallowed without any further action on the part of the Bankruptcy Court or any Party or other entity;

- Voting on Plan. The votes of the members of the Shareholder Class will be solicited through the Plan confirmation process. Each share of stock in the Debtor shall be valued at $1 solely for the purpose of voting, allowing the Bankruptcy Court to determine whether the majority of the Shareholder Class, by both number and amount of stock held, favor the proposed Compromise. This should, for the purpose of approving the Compromise, alleviate the issue regarding whether Hanson is a Shareholder Representative, as he will not be voting on behalf of the Shareholder Class.

- Deadline for Shareholder Class certification. If the Shareholder Class is not certified by the date that is 180 days after the Effective Date, then the proposed Compromise is null and void *ab initio*. In such an event, (i) the members of the Shareholder Class will receive the treatment proposed for all Equity Holders in the Plan (cancellation of Interests and no distribution);' (ii) Hanson may continue to assert the Breach Claim in his own right; and (iii) the Liquidating Trustee will retain the right to object to the Breach Claim notwithstanding the Claim Objection Bar Date. In such an event, there will be no holders of Class 3(b) Claims.

The Chapter 11 Trustee anticipates filing the Lift Stay Motion shortly and anticipates Hanson beginning the process regarding class certification in the Hanson Action while the Plan approval process is pending. The Compromise allows the Debtor's case to move forward and cures the issues with the Proposed Settlement. The Chapter 11 Trustee asserts that the proposed Compromise is in the best interests of the Debtor's Estate and its creditors and respectfully requests that (i) it be approved as a part of the Plan confirmation process and (ii) the approval be included in the Confirmation Order.

(iv) Voting. Class 3(b) is impaired and the holders of Allowed Class 3(b) Claims are entitled to vote to accept or reject the Plan. Solely for the purpose of voting, each Shareholder Class claim shall be valued at $1 per share held in order to determine whether 2/3 in value of Class 3(b) shall have accepted the Plan.

**4.4. Class 4 - Subordinated Claims.**Treatment. Each holder of an Allowed Subordinated Claim (except any holder that agrees to a lesser or otherwise different treatment), in exchange for and in full satisfaction of such Claim, shall be paid its Pro Rata Share of the Liquidating Trust Assets, if any exist, after payment in full of all Allowed Administrative Claims and all Allowed Claims in Classes 1, 2, and 3. Any such payments will be made on the later of (i) within fifteen (15) days of a Subordinated Claim of the date upon which such Subordinated Claim becomes an Allowed Claim or (ii) the date upon which all claims in Classes 1-3 and all unclassified claims have been satisfied in full. The Chapter 11 Trustee does not believe that there are any claimants currently in Class 4. **The Chapter 11 Trustee does not anticipate that any distribution will be made on account of any Class 4 Claims that may arise.**

(ii) Voting. Class 4 is impaired and because the holders of Class 4 claims are unlikely to receive or retain any Property, the holders of Allowed Class 4 are deemed to have rejected the Plan.

**4.5. Class 5 - Equity Interests**Treatment Upon the Effective Date, all Equity Interests in the Debtor shall be cancelled, voided and of no further force or effect whatsoever. **No distributions will be made on account of any Equity Interest in the Debtor.**

(ii) Voting. Class 5 is impaired. Because holders of Equity Interests in Class 5 will not receive or retain any distribution or Property under the Plan on account of their Equity Interests, the holders are deemed to have voted to reject the Plan.

## ARTICLE V

## PLAN IMPLEMENTATION

**5.1. Impairment Controversies.**

If a controversy arises as to whether any Class of Claims is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class of Claims under this Plan. In such an event, the Chapter 11 Trustee hereby moves the Bankruptcy Court to allow him to amend the Plan.

**5.2. Classes and Claims Entitled to Vote.**

Holders of Claims in Classes 3 through 5 are impaired. Class 4 is unlikely to receive any distribution under the Plan and may have no creditors in it and is deemed to reject the Plan. Class 5 will receive no distributions and is deemed to reject the Plan. Class 3 creditors are the only creditors entitled to vote on this Plan.

**5.3. Cramdown.**

This section of the Plan constitutes the Chapter 11 Trustee's request pursuant to 11 U.S.C. § 1129(b) that the Bankruptcy Court confirm the Plan.

**5.4. Distributions Pursuant to the Plan.**

Within seven (7) days of the Administrative Claims Bar Date, the Liquidating Trustee shall make, or shall make adequate reserves for (in the case of Claims that are not Allowed Claims on the Effective Date), the distributions required to be made under this Plan to holders of Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims.

**5.5. Payments and Transfers by the Chapter 11 Trustee and the Liquidating Trust on and After the Effective Date.**

(i)     On the Effective Date, the Liquidating Trust Assets, expressly including the Litigation and all Other Causes of Action, shall be deemed to have been transferred by the Debtor or the Chapter 11 Trustee to the Liquidating Trust, free and clear of all liens, Claims, and encumbrances, but subject to any obligations imposed by this Plan.  In satisfaction of the requirements of 11 U.S.C. § 1129(a)(16), all transfers of property under this Plan shall be deemed to have been made in accordance with any applicable provisions of non-bankruptcy law governing the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(ii)     On or after the Effective Date, in the time and manner set forth herein, the Liquidating Trust shall remit to the respective holders of all remaining and unpaid Allowed Administrative Expense Claims, Allowed Priority Claims, an amount in Cash equal to 100% of the amount of such Allowed Claim.  Subject to the foregoing, on and after the Effective Date, the Liquidating Trust shall satisfy all Allowed Class 3 and 4 Claims in the time and manner, and to the extent, set forth in Article IV.

(iii)     After the Effective Date, all remaining Allowed Administrative Claims (including Professional Fee Claims), and any and all Allowed Priority Claims against the Debtor that were not paid in full on the Effective Date shall be paid by the Liquidating Trust.

**5.6. Liquidating Trust.**

(i)     <u>Signature of the Liquidating Trust Agreement</u>.  On or prior to the Effective Date, the Liquidating Trust Agreement shall be signed, and all other necessary steps shall be taken to establish the Liquidating Trust without any requirement of further action by the Chapter 11 Trustee or any governing body of the Debtor.  This section 5.6 sets forth certain of the rights, duties, and obligations of the Liquidating Trust and the Liquidating Trustee.  In the event of any conflict between the terms of this Plan and the terms of the Liquidating Trust Agreement, the terms of this Plan shall govern.

(ii)     <u>Purpose of the Liquidating Trust</u>.  The Liquidating Trust shall be established for the purpose of receiving, holding, liquidating and distributing the Debtor's assets to the holders of Allowed Claims as provided in the Plan and Confirmation Order and to make other payments called for in the Plan, with no objective to continue or engage in the conduct of a trade or business.

(iii)     <u>The Liquidating Trust Assets</u>.

(a)     The Liquidating Trust's *res* shall consist of the Liquidating Trust Assets. Any Cash or other property received following the Effective Date by the Liquidating Trust from

third parties from the prosecution, settlement, or compromise of any Litigation or Other Causes of Action (including any proceeds from any insurance policies), from the sale of Property, or otherwise shall constitute Liquidating Trust Assets. The Liquidating Trust Assets shall also include a single share of stock in the Debtor, which shall be issued to the Liquidating Trust on the Effective Date and shall be the sole ownership interest in the Debtor.

(b)     On the Effective Date or as soon as practicable thereafter, the Chapter 11 Trustee shall transfer all of the Liquidating Trust Assets to, and such assets shall vest in, the Liquidating Trust free and clear of all liens, Claims, and encumbrances, except to any extent otherwise provided in the Plan and the Liquidating Trust Agreement.

(c)     Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall be a representative of the Estate pursuant to 11 U.S.C. §§ 1123(a)(5), 1123(a)(7), and 1123(b)(3)(B) with respect to the Liquidating Trust Assets and shall be automatically deemed substitute as named Plaintiff in all pending litigation and shall have all rights, standing and interest of the Estate and Chapter 11 Trustee in that litigation. **ALL LITIGATION AND OTHER CAUSES OF ACTION (INCLUDING, WITHOUT LIMITATION, ALL THE LITIGATION, ALL OTHER CAUSES OF ACTION AND ALL AVOIDANCE ACTIONS) SHALL SURVIVE CONFIRMATION AND CONSUMMATION OF THE PLAN AND THE COMMENCEMENT OR PROSECUTION OF SAME SHALL NOT BE BARRED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE.**

(iv)     <u>The Liquidating Trustee</u>. Matthew D. Orwig, not individually, but solely as a fiduciary for the Liquidating Trust, shall be the initial Liquidating Trustee. The designation of the Chapter 11 Trustee as the initial Liquidating Trustee shall be effective on the Effective Date without the need for (i) any further order of the Bankruptcy Court or (ii) any further action by any other governing body of the Debtor.

(v)     <u>Role of the Liquidating Trustee</u>.

(a)     In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, after payment in full of Allowed Class 1 and 2 Claims and Allowed Administrative Claims, the Liquidating Trustee shall have the power and authority to, *inter alia* (as may be set forth in the Liquidating Trust Agreement): (1) manage, invest, and distribute the Liquidating Trust Assets to the holders of Allowed Class 3 and 4 Claims, (2) hold, manage, sell, and distribute Cash or other Liquidating Trust Assets obtained through the exercise of his power and authority for the benefit of the Debtor, (3) prosecute, settle, and otherwise resolve, in the names and on behalf of the Debtor, its Estate, or the Liquidating Trust, the Litigation and all Other Causes of Action, including the power and authority to continue and to commence Litigation or pursue any Other Causes of Action, (4) prosecute and resolve objections to any Claim (or any portion thereof) in the name and on behalf of the Debtor, or its Estate, or the Liquidating Trust, and any Disputed Administrative Expense Claims, Disputed Priority Tax Claims, or Disputed Priority Non-Tax Claims, (5) perform such other functions as are provided in the Plan and the Liquidating Trust Agreement, (6) without Bankruptcy Court oversight, retain and compensate professionals to assist him in performing the functions as provided in the Plan and the Liquidating Trust Agreement, (7) to perform or delegate such other functions and services and duties as he deems reasonably necessary or appropriate, (8) administer the closure of the Chapter 11 Case, and (9)

take any and all reasonably necessary or appropriate steps to effectuate the dissolution of the Debtor pursuant to the terms of the Plan and applicable law. The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets, subject to (a) the approval of the Bankruptcy Court after notice and a hearing (as appropriate), (b) the terms and conditions of the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in the best interests of the Debtor and the holders of Allowed Claims against the Debtor.

(b) The Liquidating Trustee shall be authorized to exercise all powers regarding the Debtor's tax matters, including filing tax returns, to the same extent as if the Liquidating Trust was the Debtor. The Liquidating Trustee (A) shall complete and file, to the extent not previously filed, the Debtor's pre- and post-petition federal, state, and local tax returns, (B) may, to the extent not previously requested, request an expedited determination of any unpaid tax liability of the Debtor under 11 U.S.C. § 505(b) for all tax periods starting after the Petition Date through the Effective Date as determined under applicable tax laws, and (C) shall represent the interests and account of the Debtor before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit. The Liquidating Trustee shall also file tax returns (if any) for the Liquidating Trust as a grantor trust under section 671 of the Internal Revenue Code and Treasury Regulation Section 1.671-4.

(vi) <u>Cash</u>. The Liquidating Trustee may invest cash (including any earnings thereon or proceeds therefrom) as permitted by 11 U.S.C. § 345, or other controlling authorities.

(vii) <u>Costs and Expenses of the Liquidating Trust</u>. The costs and expenses of the Liquidating Trust, including the fees and expenses of the Liquidating Trustee and the professionals retained in accordance with section 5.3(ix) of this Plan (including the costs and expenses incurred in connection with the pursuit of the Litigation or Other Causes of Action), shall be paid out of the Liquidating Trust Assets. All such costs and expenses shall be paid in the manner set forth in this Plan and in the Liquidating Trust Agreement.

(viii) <u>Compensation of the Liquidating Trustee</u>. The Liquidating Trustee shall be entitled to reasonable compensation and reimbursement of expenses without subsequent Bankruptcy Court approval upon such terms as are approved by the Bankruptcy Court at or after the Confirmation Hearing.

(ix) <u>Retention of Professionals by the Liquidating Trust</u>. The Liquidating Trustee may retain and compensate legal counsel and other professionals to provide professional services, including in connection with the Plan or the Liquidating Trust Agreement, without the need for any Bankruptcy Court approval, including in connection with the prosecution or settlement of the Litigation, all Other Causes of Action, or objections to Disputed Claims. Without limiting the generality of the foregoing, the Liquidating Trust and the Liquidating Trustee may retain any professional who previously represented any party-in-interest in this Chapter 11 Case on or prior to the Effective Date.

(x) <u>Distribution of the Liquidating Trust Assets</u>. The Liquidating Trustee shall, at his discretion, make distributions of the Liquidating Trust Assets on hand commencing as soon as practicable after the Effective Date, retaining appropriate reserves for amounts that: (a) would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to

the time of such distribution (but only until such Claim is resolved), (b) are reasonably necessary to meet contingent liabilities (including with respect to any indemnification obligations owed to the Liquidating Trustee, pursuant to the terms and conditions of the Plan and the Liquidating Trust Agreement) and to maintain the value of the Liquidating Trust Assets during liquidation, (c) necessary to pay anticipated future reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets) as determined by the Liquidating Trustee, and (d) are needed to satisfy other anticipated liabilities (including a reasonable reserve for unanticipated future liabilities, fees, and expenses) to be incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

(xi)    Federal Income Tax Treatment of the Liquidating Trust.  The Liquidating Trust shall be considered a "grantor" trust for federal income tax purposes, created by the Debtor to liquidate its assets to pay Allowed Claims, and shall therefore not have separate liability for federal income taxes relating to, or arising from, the transfer of Liquidating Trust Assets from the Debtor or the liquidation of the Liquidating Trust Assets.  As such, for federal income tax purposes, the Debtor will be treated as the owner of the Liquidating Trust Assets.  In accordance with the decision of the United States Supreme Court in *Holywell Corp. v. Smith*, 112 S.Ct. 1021 (1992), the Liquidating Trustee shall be required to file the income tax returns that the Debtor would have filed if its assets had not been conveyed to the Liquidating Trust and the Liquidating Trust will promptly pay any tax liability created by the liquidation of the Liquidating Trust Assets.  The Liquidating Trustee shall reserve a sum sufficient to pay any accrued or potential Debtor tax liability arising from the liquidation of Liquidating Trust Assets.

(xii)    Final Distributions.    Prior to making a final distribution, dissolving the Liquidating Trust and closing the Chapter 11 Case, the Liquidating Trustee may apply to the Bankruptcy Court for (i) an order authorizing final distribution, closing the Chapter 11 Case, and releasing the Liquidating Trustee and the Liquidating Trust from any and all claims, debts, or liabilities, including any and all claims, debts, or liabilities for taxes to any and all taxing authorities, and/or (ii) to any applicable authority, pursuant to under 11 U.S.C. § 505, for a determination of any tax liability payable by the Debtor or the Liquidating Trust.  The Liquidating Trustee shall not be required to make a final distribution unless and until the Liquidating Trustee determines that the Liquidating Trust and the Debtor have no remaining liabilities for taxes of any kind.  Under no circumstances will the Liquidating Trustee have any personal liability for any taxes related to the Debtor, the Liquidating Trust or the Liquidating Trust Assets.

(xiii)    The Liquidating Trust and Liquidating Trustee shall not make or encourage others to make any trading market in Claims against or cancelled Equity Interests in the Debtor.  The Liquidating Trustee will not engage the services of any market maker or other person to facilitate the development of such a market or publish information about prices at which Claims against or cancelled Equity Interests may be transferred.

(xiv)    Other than the reporting provided for in Section 3.3 of the Liquidating Trust Agreement, it is not anticipated that Claims against or cancelled Equity Interests in the Debtor will be listed on any securities exchange or quoted on any over the counter trading service or that the Liquidating Trust will make any additional reporting of any nature, including, without

limitation, press releases, service of pleadings or periodic reporting with the Securities and Exchange Commission ("SEC") or any other governmental body or regulatory agency.

(xv)   Dissolution.   The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, when: (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, and (iii) all distributions required to be made by the Liquidating Trust under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon notice and opportunity for a hearing, determines that one or more fixed period extensions (not to exceed five (5) years each) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets or the dissolution of the Liquidating Trust and the Debtor.

(xvi)   Indemnification of the Liquidating Trustee.   The Liquidating Trustee and the Liquidating Trust's agents and professionals shall not be liable for actions taken or omitted in his or their capacity as, or on behalf of, the Liquidating Trust, except upon a finding by the Bankruptcy Court that he or they acted or failed to act as the result of gross negligence, or in reckless disregard of his or their duties, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of his or their actions or inactions in his or their capacity as, or on behalf of, the Liquidating Trust, except for any actions or inactions involving gross negligence, or in reckless disregard of his or their duties. Any indemnification claim of the Liquidating Trustee or the Liquidating Trust's professionals or agents shall be satisfied from the Liquidating Trust Assets, subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of retained professionals.

(xvii)   Closing the Chapter 11 Case.

(a)   When all Disputed Claims have become Allowed Claims, have been disallowed by a Final Order, or have been otherwise fully resolved, and all of the Liquidating Trust Assets have been distributed in accordance with this Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules and to dissolve the Debtor; provided, however, that nothing in this Plan or the Liquidating Trust Agreement shall prevent the Liquidating Trustee from seeking authority from the Bankruptcy Court to close the Chapter 11 Case at any time prior thereto, in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(b)   If at any time the Liquidating Trustee determines that the expense of administering the Liquidating Trust to make a final distribution to holder of Allowed Claims is likely to exceed the value of the Liquidating Trust Assets, the Liquidating Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Case, (ii) donate any balance to a charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to any of the Debtor, the Liquidating Trustee, and any insider of the Liquidating Trustee, and (iii) close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.  Notice of such application shall be given electronically, to the extent practicable, to those parties who have filed requests for notices in the Chapter 11 Case and who hold unpaid Allowed Claims or Disputed Claims.

(xviii) <u>Books and Records</u>. Upon the Effective Date, or as soon thereafter as is reasonably practicable, the Chapter 11 Trustee shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtor or the Chapter 11 Trustee. The Liquidating Trust shall have the responsibility of storing and maintaining the books and records transferred hereunder until the later of (i) one year after the Debtor is dissolved in accordance with this Plan or (ii) the resolution of each Litigation or any Other Causes of Action that is commenced prior to or after the Effective Date, after which time such books and records may, subject to the Effective Date, be abandoned or destroyed without further order of the Bankruptcy Court. For purposes of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data. The Chapter 11 Trustee shall also transfer and assign to the Liquidating Trust all of his claims and rights in and to their books and records that are maintained by, or in possession of, third parties (including any governmental entities), wherever located.

## 5.7. Setoffs.

The Chapter 11 Trustee or the Liquidating Trust may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder or under any order of the Bankruptcy Court shall constitute a waiver or release by the Debtor, the Chapter 11 Trustee or the Liquidating Trust of any such claim the Debtor may have against the holder of such Claim.

## 5.8. Establishment and Maintenance of Reserves.

(i) <u>Administrative Claims Reserve</u>. On the Confirmation Date, the Chapter 11 Trustee shall provide a good faith estimate of the aggregate amount of unpaid Administrative Claims and, within seven (7) days of the Administrative Claim Bar Date, shall establish an Administrative Claims Reserve in order to make the payments to holders of Administrative Claims as such Administrative Claims become Allowed.

(ii) <u>General Distribution Provisions</u>. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, distributions to the holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each holder as set forth in its filed Proof of Claim or written change of address, if any, (b) the address of each holder as set forth in the Schedules (if no Claim was filed) or (c) the last known address of such holder if no proof of Claim was filed and the address in the Debtor's Schedules is no longer correct.

(iii) <u>Undeliverable or Unclaimed Distributions</u>. In the event that any distribution to any holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such holder unless and until the Chapter 11 Trustee or the Liquidating Trust, as the case may be, are notified of such holder's then-current address. The Liquidating Trustee will send a letter to any holder of an Allowed Claim that does not negotiate a distribution check within ninety (90) days of the check's issuance. If (i) there is no contact from the holder of the Allowed Claim within ninety (90) days of the sending of the Liquidating Trustee's letter and (ii) the check is not negotiated during that ninety (90) day period, the Claim will be disallowed and the holder

of the Claim shall be forever barred and enjoined from asserting the Claim against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Assets, the Chapter 11 Trustee, or the property or assets of any of them and no further distribution shall be made to the holder of that Claim, with the funds reserved for such Claim to be distributed among the remaining Allowed Claims remaining unpaid. Nothing contained in this Plan or the Liquidating Trust Agreement shall require any of the Debtor, Chapter 11 Trustee, the Liquidating Trust or the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

**5.9.    Minimum Distributions**.

Notwithstanding anything herein to the contrary, if a distribution to be made to a holder of an Allowed General Unsecured Claim on any Distribution Date would be $100 or less, no such distribution is required to be made to that holder at that time. Such undistributed funds shall be held by the Liquidating Trustee for subsequent distribution to that Claim holder either (i) when further amounts become available such that the distribution to that holder will exceed $100 or (ii) when final distributions are made (this provision shall not apply to final distributions).

**5.10.    Cancellation of Existing Claims.**

On the Effective Date, any document, agreement or instrument evidencing a Claim against or an Interest in the Debtor is and shall be deemed cancelled and of no force or effect without any further act or action under the any applicable agreement, law, regulation, order or rule and the obligations of the Debtor under such documents, instruments or agreements evidencing such Claims shall be discharged, except obligations under the Plan. For the avoidance of doubt, Allowed Class 3 Claims and Allowed Class 4 Claims will be discharged as payments (if any) are made from the Liquidating Trust to a holder of an Allowed Class 3 or Class 4 Claim.

**5.11.    Termination of Shareholder (Equity Interest) Rights.**

On the Effective Date, all Equity Interests in the Debtor shall cease to exist. On the Effective Date, the Debtor shall issue a single share of stock in the Debtor, which shall be issued to the Liquidating Trust and shall represent the sole ownership interest in the Debtor. Any right associated with any Equity Interest issues prior to the Effective Date will be null and void.

## ARTICLE VI

## TREATMENT OF DISPUTED CLAIMS

**6.1.    Objections to Claims.**

Objections to Claims shall be filed on or before the Claim Objection Bar Date by the Chapter 11 Trustee or the Liquidating Trustee or any other entity entitled to do so. All Claims shall be subject to 11 U.S.C. § 502(d), notwithstanding the expiration of the Claim Objection Bar Date. The failure by the Chapter 11 Trustee to object to, or to examine for purposes of voting, any Claim as of the Confirmation Date shall not be deemed to be a waiver of his right or the right

of the Liquidating Trustee to object to, or to re-examine, such Claim in whole or in part after the Confirmation Date.

**6.2. Distributions on Disputed Claims.**

Notwithstanding any other provision in this Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. As soon as practicable after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim will receive all distributions to which such holder is then entitled under the Plan. Except as provided in 11 U.S.C. § 502(d), any Person who holds both an Allowed Claim and a Disputed Claim will receive the appropriate distribution on the Allowed Claim, although no distribution will be made on the Disputed Claim until such dispute is resolved by settlement or Final Order.

**6.3. Disallowance of Claims without Further Order of the Court.**

As of the Confirmation Date, any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules, as amended, and for which a proof of claim has not been filed by the Creditor, shall be deemed expunged, without further act or Order of the Bankruptcy Court.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1. Rejection of Executory Contracts.**

Except as otherwise set forth herein, on the Effective Date, all Executory Contracts of the Debtor will be deemed to have been rejected in accordance with 11 U.S.C. §§ 365 and 1123, unless expressly assumed as identified on a list that the Chapter 11 Trustee may file with the Bankruptcy Court, if at all, on or before the Confirmation Date. Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to 11 U.S.C. §§ 365 and 1123.

**7.2. Rejection Claims.**

Allowed Claims arising from rejection of any Executory Contract of the Debtor pursuant to this Plan shall be treated as Class 3(a) Unsecured Claims.

**7.3. Bar Date for Rejection Claims.**

A proof of Claim with respect to any Claim arising from rejection of any Executory Contract of the Debtor pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received within thirty (30) calendar days after the date upon which the Chapter 11 Trustee or Liquidating Trustee files the Notice of Effective Date described in section 9.4 of this Plan. The holder of any such Claim not timely filed and served shall be forever barred from asserting such Claim against the Debtor or its Estate and the Debtor's Estate shall be discharged from such Claims and the Liquidating Trust shall not be obligated to pay any such Claim.

## ARTICLE VIII

## RETENTION OF LITIGATION, RIGHTS AND CAUSES OF ACTION

**8.1.    Preservation of Causes of Action.**

All Litigation, Other Causes of Action, claims, rights of setoff and other legal and equitable defenses of the Debtor and/or its Estate are preserved for the benefit of the Liquidating Trust unless expressly released, waived, or relinquished in this Plan or the Confirmation Order. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as an indication that the Liquidating Trust will not pursue a cause of action (including, but not limited to claims, rights, defenses, third-party claims, damages, executions, demands, cross-claims, counterclaims, suits, causes of action, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise) against them.  The causes of action that are preserved for the benefit of the Liquidating Trust and for which the Liquidating Trustee shall be appointed representative of the Estate pursuant to 11 U.S.C. § 1123(b)(3)(B) shall include, but not be limited to, those causes of action described below:

(a)     those set forth in the Schedules;

(b)     the Other Causes of Action;

(c)     those set forth in any lawsuit, court proceeding, adversary proceeding or contested matter pending filed by the Chapter 11 Trustee on or before the Effective Date, including, but not limited to, the Litigation;

(d)     those set forth in the Litigation, including, but not limited to, all claims that are or could be stated in the adversary proceeding styled and numbered *Matthew D. Orwig, as Chapter 11 Trustee of FirstPlus Financial Group, Inc., Plaintiff, v.  Robert Freeman;  James Roundtree; Daniel Phillips; David Ward; John Fitzgerald; John Maxwell; William Handley; Dr. Robert O'Neal; Jack Roubinek; Gary D. Alexander; Roger S. Meek; David Roberts; Joseph P. Steward; William Hickman; Paul Ballard; Olshan Grundman; Frome Rosenzweig & Wolosky LLP; David Adler, Esq.; Eizen Fineburg & Mccarthy P.C.; Gary J. Mccarthy, Esq.; William T. Maxwell, Esq.; William Maxwell PLLC; William T. Maxwell, P.C.; Buckno Lisicky & Company, P.C.; Anthony Buczek, CPA; Siegal & Drossner, P.C.; Howard Drossner, CPA; Kensington Company & Affiliates, Inc.; Ken Stein; Salvatore Pelullo; Seven Hills Management, LLC; Learned Associates of North America, LLC; and Nicodemo S. Scarfo, Jr., Defendants;* Adv. Pro. No. 11-03397, currently pending in the Bankruptcy Court;

(e)     any and all Avoidance Actions, claims, causes of action or enforceable rights of the Debtor against third parties, or assertable by the Debtor or Chapter 11 Trustee on behalf of Creditors, its Estate, or itself for recovery, turnover or avoidance of obligations, or preferential or fraudulent transfers of property or interests in property and other types or kinds of property or interests in property recoverable or avoidable pursuant to Chapter 5 or other sections of the

Bankruptcy Code or any applicable law including, without limitation, 11 U.S.C. §§ 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553; and

(f)     any and all claims or causes of action of the Debtor or its Estate relating to any pre- or post-petition activities against the Debtor's former officers, directors, principals or advisors; and any current or former professionals of the Debtor retained either pre- or post-petition (including, without limitation, legal, accounting, tax, or valuation advisors or consultants) including, without limitation, claims or causes of action for: (i) alleged breaches of fiduciary duty; (ii) alleged fraud or fraudulent inducement; (iii) alleged negligence; (iv) alleged fraudulent or negligent misrepresentations; (v) alleged legal, accounting or other professional negligence or malpractice; (vi) alleged illegal dividends or payments received; (vii) objections to professional compensation applications as well as any other claims by the Debtor against its professionals; (viii) claims regarding any professional of the Debtor relating to or arising from any professional compensation application; (ix) alleged civil conspiracy; (x) alleged fraudulent insurance acts; (xi) alleged violations of any consumer protection act or deceptive trade practice act; (xii) alleged unjust enrichment; (xiii) alleged breach of contract; (xiv) alleged tortious interference with contracts or prospective relations; (xv) alleged deceit by misrepresentation or concealment; or (xvi) alleged common law fraud.

For the avoidance of doubt, the Liquidating Trustee is being designated and appointed as the representative of the Debtor, the Estate, and the Liquidating Trust and is empowered to pursue all of the actions set forth above, pursuant to, *inter alia*, 11 U.S.C. § 1123(b)(3)(B). Further, no causes of action, claims, rights, defenses, third-party claims, damages, executions, demands, cross-claims, counterclaims, suits, causes of action, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever related thereto owned by the Debtor as of the Petition Date or owned by the Estate at any time prior to or on the Effective Date are released, waived, or otherwise abandoned as a result of the confirmation of the Plan, except any of the foregoing specifically released in the Plan or through a Court-approved settlement pursuant to Bankruptcy Rule 9019.

## ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**9.1     Conditions Precedent to Effectiveness.**

This Plan shall not become effective unless and until the following conditions are satisfied or waived by the Chapter 11 Trustee in accordance with this Article.

(a)     The Bankruptcy Court shall have entered the Confirmation Order which is, in form and substance, satisfactory to the Chapter 11 Trustee;

(b)     No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this section of the Plan are satisfied or waived;

(c)     The Liquidating Trust Agreement and all documents, instruments and agreements provided for under, or necessary to implement, the Plan shall have been executed and delivered by the parties thereto, in form and substance satisfactory to the Chapter 11 Trustee, unless such execution or delivery has been waived by the parties benefited thereby and all such documents, instruments and agreements shall be effective on the Effective Date.

**9.2.    Satisfaction of Conditions.**

Any actions required to be taken on the Effective Date shall occur, or shall be deemed to have occurred, simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**9.3.    Failure of Conditions.**

In the event that one or more of the conditions precedent set forth in section 9.1 of this Plan cannot be satisfied and the occurrence of such conditions is not waived by the Chapter 11 Trustee on or before the date that is 180 days after the Confirmation Date, then the Chapter 11 Trustee shall file a notice of the failure of the Effective Date with the Bankruptcy Court and (i) the Confirmation Order shall be vacated by the Bankruptcy Court, (ii) the Plan shall be null and void in all respects, and no distributions under the Plan shall be made, (iii) the Chapter 11 Trustee, Debtor, and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (iv) the Debtor's obligations with respect to Administrative Expenses, Claims and Equity Interest shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other Person or shall prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**9.4.    Notice of the Effective Date.**

As soon as reasonably practicable after the occurrence of the Effective Date, but no later than fifteen (15) days thereafter, the Liquidating Trustee shall file with the Bankruptcy Court and serve upon all Persons served with a copy of the Disclosure Statement a notice of:  (a) the occurrence of the Effective Date; (b) the deadline established under this Plan for the filing of Administrative Claims; (c) the procedures for changing an address; and (d) other matters as the Liquidating Trustee deems appropriate.

**9.5.    Plan Modification.**

The Chapter 11 Trustee may alter, amend, or modify the Plan pursuant to 11 U.S.C. § 1127 and Bankruptcy Rule 3019 at any time before the Confirmation Date without an additional vote if the Bankruptcy Court finds, after notice and a hearing, that the proposed modification does not adversely change the treatment of any Class, or the Claim of any holder who has not accepted the modification in writing.   After the Confirmation Date and before substantial consummation of this Plan, the Chapter 11 Trustee has the right to amend or modify the Plan in accordance with the Bankruptcy Code, if circumstances warrant amendment or modification and if, after notice and hearing, the Bankruptcy Court confirms the Plan as amended or modified.

## ARTICLE X

## RETENTION OF JURISDICTION

**10.1. Retention of Jurisdiction.**

The Bankruptcy Court will retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes:

(a) to consider Claims or the allowance, disallowance, classification, priority, estimation, subordination or payment of any Claim and any and all objections thereto;

(b) to determine motions for the rejection or assumption of Executory Contracts to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(c) to hear, determine, and resolve all applications, motions, Litigation and contested or litigated matters including, without limitation, those related to all causes of action preserved by the Plan, whether pending on the Effective Date or commenced thereafter, provided, however, that this section does not purport to confer on the Bankruptcy Court jurisdiction that it does not otherwise have under applicable law;

(d) to determine or otherwise resolve any and all matters under 11 U.S.C. § 505 with respect to any tax, fine, penalty or addition to tax asserted against the Debtor, its Estate, or the Liquidating Trust;

(e) to consider any Plan modifications, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court;

(f) to determine matters involving the Debtor or Chapter 11 Trustee in connection with actions taken or not taken by the Debtor or the Chapter 11 Trustee prior to Confirmation of the Plan and matters involving the Chapter 11 Trustee or in connection with implementation and effectuation of the Plan, or the Confirmation Order;

(g) to determine all controversies, suits and disputes that may arise in connection with the interpretation, implementation, effectuation or consummation of the Plan or the Liquidating Trust or the obligations under the Plan or the Liquidating Trust Agreement;

(h) to determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with the Plan, the Confirmation Order, or the Liquidating Trust Agreement;

(i) to hear, determine and resolve any matters or issues arising with respect to or relating to any Orders entered by the Bankruptcy Court in the Chapter 11 Case;

(j) to hear and determine any disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Liquidating Trust, the Confirmation Order or the Liquidating Trust Agreement;

(k)     to determine any and all applications for allowance of Professional Fee Claims and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(l)     to enforce holders' rights to payments and to the delivery of money to which holders of Allowed Claims may be entitled under the Plan or the Liquidating Trust Agreement;

(m)     to determine matters related to the Liquidating Trust, the Liquidating Trustee, and the Liquidating Trust Assets, including, without limitation, the determination of all controversies and disputes arising under or in connection with the Liquidating Trust Agreement, as would exist if the Liquidating Trustee were a trustee appointed under Chapter 7 of the Bankruptcy Code, and the Liquidating Trust Assets were property of the estate in such Chapter 7 case created pursuant to 11 U.S.C. § 541;

(n)     to issue injunctions, enter and implement other orders or to take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(o)     to issue orders in aid of execution of the Plan to the extent authorized by 11 U.S.C. § 1142 or otherwise; and

(p)     to enter a final decree closing the Chapter 11 Case.

**10.2.   Failure of Bankruptcy Court to Exercise Jurisdiction.**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Chapter 11 Case, including with respect to the matters set forth above in this Plan, section 10.1 of this Plan shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XI

## RELEASES AND INJUNCTION

**11.1.   Releases.**

This Plan and the distributions made under this Plan will be in full and final satisfaction, settlement and release as against the Debtor of any Claim or debt that arose before the Effective Date and any debt of a kind specified in 11 U.S.C. §§ 502(g), (h) or (i), and all Claims and Interests of any nature, including any interest accrued thereon, before, on and after the Petition Date, whether or not a (i) proof of Claim or Interest based on such debt, obligation or Interest was filed or deemed filed under 11 U.S.C. §§ 501 or 1111(a); (ii) such Claim or Interest is allowed under 11 U.S.C. § 502; or (iii) the holder of such Claim or Interest has accepted the Plan.

**11.2.   Injunction.**

As of the Confirmation Date, except as provided in the Plan or the Confirmation Order, all Persons that have held, currently hold, or may hold a Claim, Interest, or other debt or liability that is addressed in the Plan are permanently enjoined from taking any of the following actions on account of any such Claim, Interest, debt or liability, other than actions brought to enforce any rights or obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Chapter 11 Trustee, the Liquidating Trust, the Liquidating Trustee, Property of the Estate, or the Liquidating Trust Assets; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Chapter 11 Trustee, the Liquidating Trust, the Liquidating Trustee, Property of the Estate, or the Liquidating Trust Assets; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the Chapter 11 Trustee, the Liquidating Trust, the Liquidating Trustee, Property of the Estate, or the Liquidating Trust Assets; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor, the Chapter 11 Trustee, the Liquidating Trust, the Liquidating Trustee, Property of the Estate, or the Liquidating Trust Assets; and (v) commencing or continuing, in any manner or any place, any action that does not comply with, or is inconsistent with, the provisions of the Plan or the Confirmation Order.

**11.3. Exculpation.**

The Chapter 11 Trustee and his employees, representatives, legal counsel, financial advisors, consultants and agents, shall not have nor incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Debtor or the Chapter 11 Case, including, but not limited to: (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement; (iii) any contract, instrument, release or other arrangement entered into or any action taken or not taken in connection with the Plan or the Chapter 11 Case; or (iv) any distributions made pursuant to the Plan except for acts constituting willful misconduct, gross negligence or breach of fiduciary duty, and in all respects such parties shall be entitled to rely upon the advice of legal counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS.

**12.1. Substantial Consummation.**

On or after the Effective Date and upon transfer of the Liquidating Trust Assets to the Liquidating Trust, the Plan shall be deemed to be substantially consummated under 11 U.S.C. §§ 1101 and 1127(b).

**12.2. Successors and Assigns.**

All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, or assigns of such person.

**12.3. Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.4. Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests and their respective successors and assigns.

**12.5. Plan Controls.**

To the extent the Plan is inconsistent with the Disclosure Statement or the Liquidating Trust Agreement, the provisions of the Plan shall control.

**12.6. Revocation or Withdrawal.**

(a)     <u>Right to Revoke</u>.  The Chapter 11 Trustee reserves the right to revoke or withdraw the Plan prior to the Effective Date.

(b)     <u>Effect of Withdrawal or Revocation</u>.  If the Chapter 11 Trustee revokes or withdraw the Plan prior to the Effective Date, the Plan shall be deemed null and void *ab initio*. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, the Chapter 11 Trustee, or any other Person or to prejudice in any manner the rights any further proceedings involving the Debtor, its Estate or the Chapter 11 Trustee.

**12.7. Notices.**

Any notice required or permitted to be provided under the Plan or Disclosure Statement to the Chapter 11 Trustee shall be in writing and served by either (1) certified mail, return receipt requested, postage prepaid, (2) hand delivery with evidence of receipt, or (3) reputable overnight delivery service, delivery prepaid, to be addressed as follows:

FRANKLIN SKIERSKI LOVALL HAYWARD LLP
10501 N. Central Expy, Suite 106
Dallas, Texas 75231
Attn: Peter A. Franklin III

SNR DENTON
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201-1858
Attn: Matthew D. Orwig

**12.8. Limitations on Notice.**

From and after the Effective Date, notices of appearance and demands for service filed with the Bankruptcy Court shall no longer be effective.  Except as specified herein, no further notice shall be required to be served on any Person based upon such notices of appearance or

demands for service unless the Person files with the Bankruptcy Court a renewed request for service of pleadings.

### 12.9. Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

### 12.10. No Liability for Solicitation or Participation.

Pursuant to 11 U.S.C. § 1125(e), Persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities offered or sold under this Plan.

### 12.11. Term of Injunctions and Stays.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to 11 U.S.C. § 105 or 362, or otherwise and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date of the Plan as to the Chapter 11 Trustee, Debtor and the Estate and all Property; provided, however, that any injunction issued pursuant to this Plan and the Confirmation Order shall not be subject to the foregoing and shall be perpetual.

### 12.12. Incorporation of Bankruptcy Rule 9019.

In order to effectuate and implement any releases or compromises contained herein, including without Limitation the Shareholder Compromise regarding Class 3(b), the Plan is a motion pursuant to Bankruptcy Rule 9019, seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

### 12.13. Incorporation of 11 U.S.C. § 363.

The vesting of the Debtor's Property in the Liquidating Trust shall be free and clear of all liens, claims, interests, and encumbrances under 11 U.S.C. § 363(f) except as specifically provided for herein, and the Liquidating Trust shall be entitled to the full protections of 11 U.S.C. §§ 363(m) and 363(n). To the extent necessary to effectuate and implement the vesting, assumptions or transfers contained herein, the Plan shall be deemed to constitute a motion filed by the Debtor under 11 U.S.C. § 363, seeking the Bankruptcy Court's approval of the transfers contained herein as transfers made in good faith and for fair value.

### 12.14. Exemption from Transfer Taxes and Recording Fees.

In accordance with 11 U.S.C. § 1146(a), none of the issuance, transfer or exchange of any securities under this Plan, the release of any mortgage, deed of trust or other lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or

ownership of any of the Debtor's interests in any Property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan, including the releases of liens contemplated under this Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 12.15. Incorporation of 11 U.S.C. § 365.

To the extent necessary to effectuate and implement the terms of this Plan, this Plan shall be deemed to constitute a motion to assume or reject Executory Contracts filed by the Debtor pursuant to 11 U.S.C. § 365 as set forth in section 7.1 of this Plan.

### 12.16. No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor, Chapter 11 Trustee, the Liquidating Trust or the Liquidating Trustee with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any classification of any Claim.

### 12.17. Severability.

Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect.

### 12.18. Other Documents and Actions.

The Chapter 11 Trustee and the Liquidating Trustee may execute such documents and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan.

## ARTICLE XIII

### CONFIRMATION REQUEST

The Chapter 11 Trustee hereby requests that the Court confirm this Plan pursuant to 11 U.S.C. § section 1129(b).

Dated: September  8  , 2011

MATTHEW D. ORWIG

By: _____
Chapter 11 Trustee

Peter Franklin
State Bar No. 07378000
Doug Skierski
State Bar No. 24008046
Erin K. Lovall
State Bar No. 24032553
FRANKLIN SKIERSKI LOVALL HAYWARD, LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Matthew D. Orwig, Chapter 11 Trustee*